EXHIBITS, INC., Plaintiff-Appellant, v. ROGER D. SWEET, Director of Revenue, *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—97—3229, 1—97—3636 cons.

Opinion filed November 20, 1998.—Modified on denial of rehearing April 9, 1999.

Alex R. Seith, Brian L. Wolfberg, and Katrina S. McGuire, all of Schain, Firsel & Burney, Ltd., of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Michael P. Doyle, Assistant Attorney General, of counsel), for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Exhibits, Inc., brought suit to recover taxes paid under protest pursuant to the State Officers and Employees Money Disposition Act (30 ILCS 230/1 *et seq.* (West 1996)) against defendants Roger Sweet, Director of Revenue, State of Illinois, and Jerome Consentino,

Treasurer of the State of Illinois (collectively the Department).[1] The circuit court granted summary judgment to the Department. Exhibits now appeals.

For the reasons that follow, we affirm.

Exhibits brought suit against the Department seeking a declaration that an assessment of tax liability imposed by the Department was unconstitutional. The tax was assessed pursuant to the Service Occupation Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 439.101 *et seq.*), which imposes a tax on persons engaged in the business of making sales of service. Although it is a tax on the service occupation, the tax is calculated at a percentage rate of the cost of tangible personal property transferred as an incident to the sale of service. Ill. Rev. Stat. 1987, ch. 120, par. 439.103.

The parties stipulated to several essential facts. Exhibits is an Illinois corporation providing the services of designing and fabricating trade show exhibits, arranging for transportation of the exhibits to trade shows by common carrier, and assembling, maintaining, and disassembling the exhibits at the trade shows where the exhibits are used by their customers. Exhibits designs and fabricates the exhibits in Illinois. In the transactions in question, the exhibits were sold to Illinois customers and initially delivered to the customers at trade shows outside Illinois for use at those locations. Following disassembly of the exhibits at the end of the trade shows, the exhibits were returned to Illinois for storage and reuse.

The Department conducted an audit of Exhibits' records for the period of July 1, 1986, to June 30, 1989. The auditors disallowed exemptions Exhibits claimed for transactions in which the customers were located in Illinois. The auditors concluded that these transactions were not within the protection of the federal commerce clause and Exhibits should be assessed pursuant to the Service Occupation Tax Act in the amount of $122,113.

Exhibits denies that it is liable for any tax under that act and contends that the exemptions were legitimate because the exhibits were delivered and first used out of state, notwithstanding the subsequent storage in Illinois. Exhibits maintains that the commerce clause prohibits the taxation imposed. It admits that no foreign state has attempted to assess any sales, use, or similar tax on the transac-

---

[1]Kenneth Zehnder and Judy Baar Topinka have succeeded the respective offices of Director of the Department of Revenue and Treasurer of the State of Illinois and may be substituted as parties pursuant to section 2—1008(d) of the Code of Civil Procedure (735 ILCS 5/2—1008(d) (West 1996)). See *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410 (1996).

tions. Exhibits does not dispute the methodology used by the auditors to compute the tax deficiency.

The parties specifically agreed:

"As part of its sale of service with respect to each exhibit and transaction at issue, Exhibits arranged prior to the actual sale for:

(a) shipment out-of-state via common carrier for first use at an out-of-state trade show;

(b) assembly and subsequent disassembly at the out-of-state trade show;

(c) return shipment to Illinois via common carrier; [and]

(d) storage in Illinois either at Exhibits' facility in Franklin Park, Illinois or some other location in Illinois. All exhibits from the transactions at issue were therefore stored in Illinois after delivery and first use at an out-of-state trade show ***."

In all of the transactions at issue, Exhibits' customers were either headquartered in Illinois or did business in Illinois and had an Illinois address indicated on Exhibits' invoices. Exhibits' sales were usually "F.O.B. Our Plant."

On July 25, 1997, the circuit court granted the Department's motion for summary judgment. The court entered judgment in favor of defendant on September 2, 1997. Plaintiff appealed from both orders and the matters were consolidated. The sole issue before this court is whether the collection of taxes on the transactions at issue pursuant to the Service Occupation Tax Act violates the commerce clause of the United States Constitution.

■ Summary judgment is appropriate where the pleadings, depositions, and admissions, together with any affidavits, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996). The standard of review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992).

Section 3 of the Service Occupation Tax Act provides:

"A tax is imposed upon all persons engaged in the business of making sales of service (hereinafter referred to as servicemen) at the rate of 5% of the cost price of all tangible personal property *** transferred by said servicemen *** as an incident to a 'sale of service'. ***

\* \* \*

However, such tax is not imposed upon the privilege of engaging in any business in interstate commerce or otherwise, which business may not, under the Constitution and statutes of the United States, be made the subject of taxation by this State." Ill. Rev. Stat. 1987, ch. 120, par. 439.103.

The Department contends that the taxation imposed does not

violate the commerce clause. The Department relies on section 140.501(b) of the Illinois Administrative Code, which provides:

"The serviceman does not incur Service Occupation Tax Liability on property which he resells as an incident to a sale of service under an agreement by which the serviceman is obligated to make physical delivery of the goods from a point in this State to a point . outside this State, *not to be returned to a point within this State,* provided that such delivery is actually made. Nor does the tax apply to property which the serviceman resells as an incident to a sale of service under an agreement by which the serviceman, by carrier (when the carrier is not also the purchaser) or by mail, delivers the property from a point in this State to a point outside this State, *not to be returned to a point within this State.* The place at which title to the property passes to the purchaser is immaterial. The place at which the contract of sale of the service or contract to sell the service is negotiated and executed and the place at which the purchaser resides are also immaterial. Sales of service of the type described in this paragraph are deemed to be within the protection of the Commerce Clause of the Constitution of the United States." (Emphasis added.) 86 Ill. Adm. Code § 140.501(b) (eff. August 29, 1984).

The parties stipulated that at the time of the sales Exhibits had arranged for return shipment of the exhibits back to Illinois. Under the facts presented, the Department could impose a tax on the transactions according to the regulation.

■ The Department of Revenue has the authority to make, promulgate, and enforce reasonable rules and regulations relating to the administration and enforcement of the Service Occupation Tax Act. See Ill. Rev. Stat. 1987, ch. 120, pars. 439.112, 451. "Administrative regulations have the force and effect of law and are construed under the same standards which govern the construction of statutes." *Craftmasters, Inc. v. Department of Revenue,* 269 Ill. App. 3d 934, 940-41 (1995), citing *Union Electric Co. v. Department of Revenue,* 136 Ill. 2d 385, 391 (1990). Interpretations by an agency charged with administering a statute are entitled to respect and deference from a reviewing court, but they are not binding on the court and such rules cannot limit or extend the scope of a statute. *Craftmasters,* 269 Ill. App. 3d at 941, citing *Van's Material Co. v. Department of Revenue,* 131 Ill. 2d 196, 202-03 (1989). Administrative regulations, like statutes, are presumed to be valid, and a party challenging them has the burden of showing that they are unconstitutional. *Granite City Division of National Steel Co. v. Illinois Pollution Control Board,* 155 Ill. 2d 149, 164 (1993).

Exhibits argues that this court must not rely on the regulation

cited because its application violates the federal commerce clause. Exhibits contends that the proper tax to impose in this case would have been pursuant to the Service Use Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 439.33), a corollary to the Service Occupation Tax Act, which imposes a tax on the privilege of using property in Illinois acquired from a serviceman. The Service Use Tax Act discourages Illinois customers from going outside Illinois for services merely to avoid the imposition of the Service Occupation Tax Act. If applied, Exhibits contends the Service Use Tax Act would have allowed a depreciation calculation for the period of out-of-state use of the exhibits and thereby decreased its tax liability. Ill. Rev. Stat. 1987, ch. 120, par. 439.33.

Exhibits maintains that Illinois tax law contains an implicit "first use" rule and that the application of the regulation in this case violates this rule. Exhibits asserts that this court should rely on the first use rule because the rule applies to sales transactions under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 440 *et seq.*) and because it is required to prevent a violation of the federal commerce clause. The Retailers' Occupation Tax Act, also a corollary to the Service Occupation Tax Act, imposes a tax on persons engaged in the business of selling tangible personal property at retail. Ill. Rev. Stat. 1987, ch. 120, par. 441. The Retailers' Occupation Tax Act also exempts transactions that may not be taxed under the constitution and statutes of the United States. Ill. Rev. Stat. 1987, ch. 120, par. 441.

Exhibits finds authority for the imposition of a first use rule in two cases. In *Quincy Trading Post, Inc. v. Department of Revenue*, 12 Ill. App. 3d 725, 729 (1973), this court stated that when imposing a tax pursuant to the Retailers' Occupation Tax Act, "[t]he point of delivery controls, so even if the buyer is a noncitizen of Illinois[,] if he makes the purchase and takes delivery in Illinois, the tax is due." In *Superior Coal Co. v. Department of Finance*, 377 Ill. 282, 295-96 (1941), the court addressed a subsidiary corporation's contention that coal mined, sold, and delivered in Illinois to its parent company's railway for use outside the state was exempt from the Retailers' Occupation Tax Act under the interstate commerce exemption. The court found it "immaterial" that the coal was intended for use beyond the Illinois border, stating that "the fact that a portion of the coal delivered to the [parent] [was] used in other States is of no greater significance, within the contemplation of the Retailers' Occupation Tax [A]ct, than the fact that wearing apparel purchased in Illinois may later be worn in Florida or California." *Superior Coal*, 377 Ill. at 296.

Neither of these cases specifically states that it is applying a first use rule. We observe that the Retailers' Occupation Tax Act contains

language considering the "use" of the property. The term "[s]ale at retail" means:

"any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of *use* or consumption, and not for the purpose of resale in any form as tangible personal property to the extent *not first subjected to a use* for which it was purchased \*\*\*, [p]rovided that the property purchased is deemed to be purchased for the purpose of resale, *despite first being used*, to the extent to which it is resold as an ingredient of an intentionally produced product or byproduct of manufacturing." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 120, par. 440.

The Service Use Tax Act also contains language looking to the "use" of the property; it imposes a tax on the privilege of "using" personal property acquired as an incident to the purchase of services. Ill. Rev. Stat. 1987, ch. 120, par. 439.33. While these corollary statutes look to when property is "used," Exhibits fails to point to any language in the Service Occupation Tax Act directing this court to consider the "first use" of the property sold incident to a sale of services when determining the imposition of the tax on a serviceman's occupation.

Nevertheless, the cases cited by Exhibits do indicate that the point of possession or delivery is a controlling factor when determining whether to apply the Retailers' Occupation Tax Act. Exhibits contends that based on this case law a tax should not be applied to the transactions in question under the Service Occupation Tax Act because the exhibits were delivered to its customers out of state. We observe that section 140.501(b) (86 Ill. Adm. Code § 140.501(b) (eff. August 29, 1984)) discusses when a serviceman "delivers the property" when determining whether to impose a tax under the Service Occupation Tax Act.

The Department points out that the invoices of the sales transactions at issue state "F.O.B. Our Plant" and asserts that use of this term generally means that title passes to the buyer at the time the seller puts the goods in the possession of a carrier. The Department then argues that because the customers took title to the exhibits in Illinois, the tax must apply. However, section 140.501 of the Administrative Code (86 Ill. Adm. Code § 140.501 (eff. August 29, 1984)), clearly states that title is immaterial. Moreover, the Illinois Supreme Court has declined to find the passage of title controlling with regard to cases under the Retailers' Occupation Tax Act.

In *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385 (1990), the supreme court examined whether purchases of coal from Illinois companies by nonresident companies for use out of state were subject to the Retailers' Occupation Tax Act or the Use Tax Act (Ill.

Rev. Stat. 1987, ch. 120, par. 439.1 *et seq.*). The Administrative Code provided regulations with regard to sales of property originating in Illinois, stating:

" 'a) Where tangible personal property is located in this State at the time of its sale \*\*\* and then delivered in Illinois to the purchaser, the seller is taxable if the sale is at retail.

1) The sale is not deemed to be in interstate commerce if the purchaser or his representative receives the physical possession of such property in this State.

2) This is so notwithstanding the fact that the purchaser may, after receiving physical possession of the property in this State, transport or send the property out of the State for use outside the State or for use in the conduct of interstate commerce.

\* \* \*

c) \*\*\* [T]he tax [does not] apply to gross receipts from sales in which the seller, by carrier (when the carrier is not also the purchaser) or by mail, under the terms of his agreement with the purchaser, delivers the goods from a point in this State to a point outside this State not to be returned to a point within this State.

d) The place at which title to the property passes \*\*\* is immaterial. \*\*\* Sales of the type described in Subsections (b) and (c) of this Regulation are deemed to be within the protection of the Commerce Clause of the Constitution of the United States.' " *Union Electric*, 136 Ill. 2d at 391-92, quoting 86 Ill. Adm. Code §§ 130.605(a), (a)(1), (a)(2), (c), (d) (eff. August 29, 1984).

The Department argued that a coal transfer facility and a barge company that received shipments of coal in Illinois from sellers and delivered coal to buyers were representatives for the purposes of receiving possession of the coal in Illinois and therefore the transactions were taxable. *Union Electric*, 136 Ill. 2d at 395. The court concluded that the companies were not representatives as contemplated by the regulations and did not receive possession of the coal in Illinois. *Union Electric*, 136 Ill. 2d at 397-98. Therefore, no Illinois tax applied. Citing a private letter ruling issued by the Department, the court added that the fact that the coal was shipped to an "f.o.b." point in Illinois and the fact that the purchasers contracted with and paid for the carriers were immaterial to the taxability of the shipments because the purchasers were not shown to be shippers or consignors on the shipping documents. *Union Electric*, 136 Ill. 2d at 400.

None of the cases cited provide a clear mandate for determining whether the Service Occupation Tax Act should be applied in this case, where an Illinois serviceman shipped property as an incident to a sale of service to an Illinois buyer from a location in Illinois to a loca-

tion out of state for a period of time with the intention to return the property to a location in Illinois. We find no case law addressing the propriety of the language in the regulation referring to property that is not going to be returned to the state as it has been applied in this case. While the *Union Electric* court cited this language pertaining to the Retailers' Occupation Tax Act, the court did not address its application because it was not an issue there. We find no Illinois authority prohibiting the imposition of the tax in this case. Therefore, we must still consider whether the imposition of the tax violates the federal commerce clause.

■ The commerce clause of the United States Constitution provides that "[t]he Congress shall have Power *** [t]o regulate Commerce *** among the several States." U.S. Const., art. I, § 8. "While expressed as a grant of power to Congress, it is also well established that the commerce clause 'of its own force protects free trade among the States' (*Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 81 L. Ed. 2d 540, 545, 104 S. Ct. 2620, 2622 (1984)) and may serve in certain circumstances as a basis for invalidating state laws that interfere with interstate commerce." *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 260 (1996).

■ The United States Supreme Court announced a test for determining the validity of a state tax under the commerce clause in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977). A state tax will be sustained when the tax is applied to an activity with a substantial nexus to the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state. *Complete Auto*, 430 U.S. at 279, 51 L. Ed. 2d at 331, 97 S. Ct. at 1079, quoted in *Allegro*, 172 Ill. 2d at 261.

■ Exhibits contends that the tax imposed violates the fair apportionment prong of the test because, if other states applied the same tax structure, the transaction would be subject to multiple taxation. "The central purpose of the fair apportionment requirement is to ensure that each state taxes only its fair share of an interstate transaction." *Allegro*, 172 Ill. 2d at 266, citing *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 184, 131 L. Ed. 2d 261, 271, 115 S. Ct. 1331, 1338 (1995); *Goldberg v. Sweet*, 488 U.S. 252, 260-61, 102 L. Ed. 2d 607, 616, 109 S. Ct. 582, 588 (1989). "Courts assess the threat of malapportionment by examining whether the tax is 'internally consistent' and, if so, whether it is also 'externally consistent.' " *Allegro*, 172 Ill. 2d at 266, citing *Jefferson Lines*, 514 U.S. at 185, 131 L. Ed. 2d at 271, 115 S. Ct. at 1338.

In *Jefferson Lines* the United States Supreme Court explained:

"Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear. This test *** simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." *Jefferson Lines*, 514 U.S. at 185, 131 L. Ed. 2d at 271-72, 115 S. Ct. at 1338, quoted in *Allegro*, 172 Ill. 2d at 266.

The Supreme Court ruled in *Jefferson Lines* that Oklahoma's tax on the gross receipts of the sale of bus tickets for travel originating in Oklahoma, but concluding out of state, did not violate the internal consistency requirement. The court found no failure of consistency because if every state imposed a tax identical to Oklahoma's, that is, a tax on ticket sales originating there, no sale would be subject to more than one state tax, despite the fact that travelers may ride the buses through various states before reaching their destinations. *Jefferson Lines*, 514 U.S. at 185, 131 L. Ed. 2d at 272, 115 S. Ct. at 1338.

The parties here disagree as to whether multiple taxation would occur if every state in the union enacted legislation imposing the same tax as Illinois. To analyze this question, we must consider the imposition of this regulation as if another state had the same tax law and one of its servicemen delivered property incident to a sale of services to a location in Illinois with the intention that the property be returned to the original state. For example, if property is sold incident to a sale of services in Wisconsin to be delivered to a Wisconsin customer in Illinois with the intention that the property will be returned to Wisconsin, Wisconsin would impose a tax pursuant to the Service Occupation Tax Act. The parties disagree as to whether Illinois would also impose a tax on the same property when the property is delivered in Illinois.

The Department contends that Illinois would not impose a tax pursuant to the Service Occupation Tax on the property sold as an incident to the sale of services by the Wisconsin serviceman when delivered here and therefore there would be no multiple-taxation problem. Exhibits contends that Illinois would impose the tax on that property and there would be a multiple-taxation problem because that act does not contain a provision for offsetting taxes already paid to another state. (Under the Service Use Tax Act, on the other hand, there

are provisions for property acquired out of state so as to prevent multiple-taxation problems.)

■ While there is no specific language in the Service Occupation Tax Act or the Administrative Code providing a direct answer to the multiple-taxation question, we do not believe that the Service Occupation Tax Act would apply as Exhibits asserts to impose a tax on a Wisconsin serviceman who delivered property to a location in Illinois as an incident to a sale of service originating in Wisconsin where the property will be returned to Wisconsin.

Sections 140.501 and 140.505 of the Administrative Code (86 Ill. Adm. Code § 140.501 (eff. August 29, 1984), § 140.505 (eff. August 20, 1968)) purport to address the issue of interstate commerce under the Service Occupation Tax Act. These sections differentiate between the sales of service involving property originating in Illinois and property originating outside of Illinois. These sections do not specifically address the question at hand. However, upon review of the language used, we do not find support for the claim that there is a multiple taxation issue.

Section 140.501(a) addresses the application of the Service Occupation Tax Act when property is located in Illinois at the time of transfer as incident to a sale of service and is then delivered in Illinois. This regulation indicates that if the property is located in Illinois and delivered in Illinois, then the serviceman incurs liability under that act. In applying this rule to our Wisconsin/Illinois scenario, it would appear that, because the property originated in Wisconsin rather than Illinois, the tax would not apply to the transactions.

Section 140.501(b), quoted above, would not impose tax liability under the Service Occupational Tax Act when a serviceman delivers property located in Illinois to another state with the intent for the property to remain out of state. The language of that section implicitly suggests that Illinois would not tax an out-of-state serviceman delivering property in Illinois who intends to return the property to his home state.

Section 140.505 purports to address the imposition of the tax for property originating outside Illinois. However, this section only addresses a supplier's role in the taxation scheme as the collector of the tax when property is sold to an Illinois serviceman for resale. It does not clarify how the tax applies when an out-of-state serviceman has the property delivered into Illinois for an out-of-state customer with the intent to return it to the original state.

In *Allemed, Inc. v. Department of Revenue*, 101 Ill. App. 3d 746 (1981), this court ruled that a Missouri corporation with salesmen who regularly went into Illinois to sell products to Illinois veterinar-

ians could be required to collect taxes pursuant to the Service Occupation Tax and the Use Tax. Even though the corporation had no office, place of business or stock of goods in Illinois, and most of the customers placed orders by phone directly with the Missouri office and received their orders by common carrier, the court found a sufficient "minimum connection." *Allemed*, 191 Ill. App. 3d at 749. The *Allemed* court appears to have required the Missouri corporation to collect the taxes as a supplier to Illinois servicemen.

In the instant case, Exhibits is the serviceman, not the supplier. The Service Occupation Tax Act imposes a tax on persons engaged in the business of making sales of service. The suppliers are a source for collection of the tax; it is not their occupation that is taxed. Neither *Allemed* nor section 140.505 addresses the question of whether the tax would be imposed under the Service Occupation Tax Act where the serviceman is located out of state.

Exhibits cites three private letter rulings from the Department indicating that out-of-state companies which participate in trade shows in Illinois must collect taxes pursuant to the Use Tax Act because they are maintaining a business in Illinois. See Private Letter Ruling No. 87—0083, February 27, 1987; Private Letter Ruling No. 88—0905, December 8, 1988; Private Letter ruling No. 94—0126, May 19, 1994. We do not find these rulings supportive of Exhibits' argument. Exhibits admits that these rulings only address the requirement that companies which participate in trade shows in Illinois collect taxes pursuant to the Use Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 439.1 *et seq.*). The rulings do not require the companies to collect taxes pursuant to the Retailers' Occupation Tax Act. This distinction supports the conclusion that in the same situation involving a serviceman, the Service Occupation Tax Act would not apply but the Service Use Tax Act would apply.

We note that section 130.610 of the Administrative Code (86 Ill. Adm. Code § 130.610 (eff. August 2, 1971)) discusses the application of the Retailers' Occupation Tax Act when the property is located outside of Illinois at the time of sale and the purchaser first receives physical possession of the property in Illinois. Section 130.610(d) of the Administrative Code (86 Ill. Adm. Code § 130.610(d) (eff. August 2, 1971)) provides that if the sale is made through a place of business outside of Illinois, no liability will incur "where the seller, from a point outside Illinois, makes an offer directly to the purchaser who transmits his acceptance directly to the seller outside Illinois." This regulation indicates that the Retailers' Occupation Tax Act would not apply to an out-of-state seller's delivery of property from Wisconsin to a location in Illinois where the seller and buyer are both located in

Wisconsin because the transmission of the acceptance would have occurred outside of Illinois.

Exhibits contends that the sale of service is different from the sale of retail property because a serviceman may provide services in multiple states and therefore provisions regarding the Retailers' Occupation Tax Act are not relevant to the question at hand. We recognize the distinction, but believe this situation has been addressed by the Service Use Tax Act.

The Service Use Tax Act imposes a tax upon the privilege of using in Illinois property acquired as an incident to the purchase of a service from a serviceman. Ill. Rev. Stat. 1987, ch. 120, par. 439.33. The Service Use Tax Act requires a serviceman maintaining a place of business in Illinois to collect this tax. Ill. Rev. Stat. 1987, ch. 120, par. 439.33. While the Wisconsin serviceman may be held responsible for collecting any tax due under the Service Use Tax Act on the use in Illinois of the property acquired as an incident to the purchase of services, there is no multiple-taxation problem because the Service Use Tax Act contains provisions to prevent multiple taxation. See Ill. Rev. Stat. 1987, ch. 120, par. 439.33.

We conclude that Exhibits has failed to demonstrate that the imposition of the Service Occupation Tax Act to these transactions offends the commerce clause. We therefore affirm summary judgment for the Department.

Affirmed.

HOURIHANE, P.J., and THEIS, J., concur.