TOWN CRIER, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—98—4251

Opinion filed June 30, 2000.

McDermott, Will & Emery, of Chicago (Thomas H. Donohoe and Melissa A. Connell, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Michael P. Doyle, Assistant Attorney General, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff Town Crier, Inc., a Wisconsin corporation, filed a complaint under the State Officers and Employees Money Disposition Act (30 ILCS 230/1 *et seq.* (West 1998)) against the Illinois Department of Revenue, Kenneth Zehnder, in his capacity as the Department's Director, and Judy Baar Topinka, in her capacity as Treasurer of the State of Illinois (collectively, the Department). Plaintiff's complaint alleged that the Department wrongfully assessed $33,500 in use taxes, interest and penalties on plaintiff's sales to Illinois residents from December 1, 1993, through January 31, 1996. Plaintiff alleged that the Department lacked authority to impose the use tax because plaintiff did not have a substantial nexus with Illinois under federal due process and commerce clause principles. The Department argued that plaintiff had acquired a taxable nexus in Illinois by delivering furniture to Illinois customers in plaintiff's own vehicles and by installing window treatments in Illinois. The circuit court of Cook County granted the Department's motion for summary judgment and denied plaintiff's motion for reconsideration.

For the following reasons, the order of the circuit court is affirmed.

Plaintiff is a Wisconsin corporation that operates a retail furniture store in Lake Geneva, Wisconsin. In addition to furniture, plaintiff sells carpeting, artwork and window dressings. Lake Geneva is a resort community that is heavily populated by Illinois residents who maintain second homes there. Plaintiff has a listing in the Lake Geneva telephone directory; however, it does not advertise through Illinois media outlets. Plaintiff owns no property in Illinois and has no employees or independent contractors who solicit orders in Illinois. Plaintiff uses both common carriers and its own vehicles to deliver merchandise to its customers.

In 1994, the Wisconsin Department of Revenue (WDOR) audited plaintiff and noted that it had made sales to Illinois residents on

which it did not remit Wisconsin sales tax. WDOR notified the Illinois Department of Revenue, and in 1996 the Department audited plaintiff for the period of July 1, 1989, through January 31, 1996. Because plaintiff refused to allow the Department access to its records, the audit was conducted based upon information supplied by the WDOR. This information included a sampling of plaintiff's sales journals and invoices for the months of April 1988, October 1989, February 1990, August 1991, and June 1992.

The sales records revealed that, for the sampling period, over 50% of plaintiff's gross sales constituted sales of merchandise delivered into Illinois. From December 1993 to January 1996, plaintiff made at least 54 deliveries of merchandise into Illinois. Of these 54 deliveries, 30 were made in plaintiff's own vehicles and 24 were made by common carriers. During the same time period, plaintiff installed window dressings in Illinois on five occasions. Plaintiff did not collect Illinois use tax on sales of goods delivered into Illinois, but it did collect a 5% handling fee on sales with out-of-state deliveries.

On March 29, 1996, the Department issued two notices of tax liability: the first for $101,267 for the period of July 1, 1989, through November 30, 1993, and the second for $33,500 for the period of December 1, 1993, through January 1, 1996. Plaintiff paid the second notice of tax liability under protest and filed a complaint under the State Officers and Employees Money Disposition Act (30 ILCS 230/1 *et seq.* (West 1998)). Count I of the complaint, the only relevant count on appeal, alleged that plaintiff was entitled to a refund of the $33,500 payment plus interest because the Department lacked authority to impose use tax collection responsibilities on plaintiff because plaintiff did not have a substantial nexus with Illinois under federal due process and commerce clause principles. The Department denied that the assessment was in error.

The circuit court issued a preliminary injunction enjoining the Department from depositing the funds paid by plaintiff under protest into the general revenue fund. The matter of the notice of tax liability for the period of July 1, 1989, through November 30, 1993, is currently before the administrative hearings division of the Department and has been stayed pending resolution of this matter.

In March 1998, the Department moved for summary judgment, arguing that the facts in this case presented no commerce clause or due process impediments to the assessment of use taxes. In response, plaintiff argued that it could not be deputized as Illinois' tax collection agent because it did not solicit business here, relying principally on *Miller Brothers Co. v. Maryland,* 347 U.S. 340, 98 L. Ed. 744, 74 S. Ct. 535 (1954). Plaintiff further argued that the use tax burdened inter-

state commerce because the tax was not fairly related to services provided by Illinois.

The circuit court granted the Department's motion for summary judgment on August 19, 1998. The court found that plaintiff had a sufficient nexus with Illinois to justify the use tax based upon plaintiff's deliveries to Illinois in plaintiff's own vehicles. The court also relied on the fact that plaintiff installed window treatments in Illinois on five occasions during the audit period. Finally, the court rejected plaintiff's argument that the tax was not related to services provided by Illinois because plaintiff took advantage of Illinois' roads and other services when deliveries were made into the state.

Plaintiff filed a motion for rehearing, which was denied. Plaintiff now appeals.

This appeal addresses the issue of whether the Department's assessment of use taxes against the out-of-state plaintiff-retailer was a permissible exercise of the state's taxing power under the federal commerce and due process clauses. Plaintiff argues that the Department did not have the authority to assess use taxes on it because the Department did not establish a sufficient nexus with the State of Illinois to satisfy the requirements of the commerce and due process clauses. The circuit court found that the Department acted within the parameters of the Constitution in assessing the taxes and granted summary judgment in favor of the Department.

A circuit court's grant of summary judgment is subject to *de novo* review. *Exhibits, Inc. v. Sweet*, 303 Ill. App. 3d 423, 426, 709 N.E.2d 236, 238 (1998). Summary judgment is appropriate when the pleadings and discovery, construed in the nonmovant's favor, show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Exhibits, Inc.*, 303 Ill. App. 3d at 426.

■ Illinois' use tax is imposed "upon the privilege of using in this State tangible personal property purchased at retail from a retailer." 35 ILCS 105/3 (West 1998). The tax functions as a necessary corollary to the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 1998)), the principal means in Illinois for taxing the retail sale of tangible personal property. The use tax is also imposed at the same rate as the retailers' occupation tax. 35 ILCS 105/3—10, 120/2—10 (West 1998). The primary purpose of the use tax is as follows:

> "to prevent avoidance of the [retailers' occupation] tax by people making out-of-State purchases, and to protect Illinois merchants against such diversion of business to retailers outside Illinois." *Klein Town Builders, Inc. v. Department of Revenue*, 36 Ill. 2d 301, 303, 222 N.E.2d 482 (1966).

■ Although the "ultimate incidence of the use tax falls upon the consumer," responsibility for collecting the tax falls upon retailers maintaining places of business in Illinois. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 418, 665 N.E.2d 795 (1996); 35 ILCS 105/ 3—45 (West 1998). If such a retailer fails to collect the tax when obligated to do so, the Department may hold the retailer liable for the taxes or seek recovery from individual purchasers. 35 ILCS 105/8, 10 (West 1998).

As is the case with all statutes, the Use Tax Act is constrained by the United States Constitution and must be construed with constitutional limitations in mind. The constitutional limits invoked here are the constraints inherent in the commerce clause (U.S. Const., art. I, § 8) and the fourteenth amendment due process clause (U.S. Const., amend. XIV, § 1).

The Supreme Court has acknowledged that it has not always been precise in distinguishing between the commerce clause and the due process clause, but emphasized that the two are analytically distinct. *Quill Corp. v. North Dakota*, 504 U.S. 298, 305, 119 L. Ed. 2d 91, 102, 112 S. Ct. 1904, 1909 (1992). The Court suggested:

" '[A]lthough the two notions cannot always be separated, clarity of consideration and of decision would be promoted if the two issues are approached, where they are presented, at least tentatively as if they were separate and distinct, not intermingled ones.' " *Quill*, 504 U.S. at 306, 119 L. Ed. 2d at 102, 112 S. Ct. at 1909, quoting *International Harvester Co. v. Department of Treasury*, 322 U.S. 340, 353, 88 L. Ed. 1313, 1321, 64 S. Ct. 1019, 1033 (1944) (Rutledge, J., concurring in part and dissenting in part).

Thus, despite the fact that plaintiff intermingled the analysis of the two notions in its briefs before this court, we scrutinize the assessment of the tax against plaintiff under each constitutional limitation separately. We begin with the limits of the commerce clause.

■ The commerce clause gives Congress the power to "regulate Commerce *** among the several States." U.S. Const., art. I, § 8, cl. 3. The Supreme Court has consistently interpreted this express grant of congressional authority as implicitly containing a negative command, known as the dormant commerce clause, which limits the power of the states to tax interstate commerce even in the absence of congressional legislation. *Brown's Furniture*, 171 Ill. 2d at 420. This construction serves the "Commerce Clause's purpose of preventing a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole, as it would do if it were free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." *Oklahoma Tax Comm'n v. Jefferson*

*Lines, Inc.*, 514 U.S. 175, 179-80, 131 L. Ed. 2d 261, 268, 115 S. Ct. 1331, 1335-36 (1995). The party raising a commerce clause challenge to a state tax scheme carries the burden of persuasion. See *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 164, 77 L. Ed. 2d 545, 552, 103 S. Ct. 2933, 2939-40 (1983).

■ Contemporary dormant commerce clause analysis does not prohibit all state taxation of interstate commerce but rather only that which is unduly restrictive or discriminatory. *Brown's Furniture*, 171 Ill. 2d at 420. To withstand an allegation that a state tax has unconstitutionally burdened interstate commerce, the tax must satisfy the four-part test articulated in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977). *Complete Auto* requires that the state tax (1) be applied to an activity with a substantial nexus with the taxing state, (2) be fairly apportioned, (3) not discriminate against interstate commerce, and (4) be fairly related to the services provided by the state. *Complete Auto*, 430 U.S. at 279, 51 L. Ed. 2d at 331, 97 S. Ct. at 1079. Plaintiff argues only that the first and fourth elements of the *Complete Auto* test were not satisfied in this case; therefore, we consider only those two elements in turn.

The first element of the *Complete Auto* test requires the use tax to be applied to an activity with a substantial nexus with the taxing state. In *Brown's Furniture*, 171 Ill. 2d at 421, the Illinois Supreme Court stated that the "most significant recent [United States] Supreme Court opinion to define 'substantial nexus' is *Quill Corp. v. North Dakota.*" In *Quill*, North Dakota sought to assess a use tax obligation on an out-of-state mail-order firm. *Quill*, 504 U.S. at 303, 119 L. Ed. 2d at 100, 112 S. Ct. at 1908. The firm did a substantial amount of business with North Dakota residents but delivered all its merchandise to North Dakota by mail or common carrier. *Quill*, 504 U.S. at 302, 119 L. Ed. 2d at 99-100, 112 S. Ct. at 1907-08.

■ For purposes of commerce clause analysis, the *Quill* Court reaffirmed the bright-line rule given in *National Bellas Hess, Inc. v. Department of Revenue*, 386 U.S. 753, 18 L. Ed. 2d 505, 87 S. Ct. 1389 (1967), forbidding the imposition of use tax collection duties upon an out-of-state vendor whose only contacts with the taxing state are via the mail or common carrier. *Quill*, 504 U.S. at 311, 119 L. Ed. 2d at 106, 112 S. Ct. at 1912-13. *Quill* thus established that an out-of-state vendor must be physically present within a state in order to meet the substantial nexus requirement under commerce clause analysis and affirmed that a "slight" physical presence is not enough. *Quill*, 504 U.S. at 315 n.8, 119 L. Ed. 2d at 108 n.8, 112 S. Ct. at 1914 n.8.

Unfortunately, the extent of a retailer's physical presence within a taxing state necessary to establish more than a "slight" physical pres-

ence, thus meeting the substantial nexus requirement, was left in question after *Quill.* However, the Illinois Supreme Court has specifically rejected the notion that a retailer's physical presence within the taxing state must be "substantial." *Brown's Furniture*, 171 Ill. 2d at 423-24. There, our supreme court analyzed the substantial nexus requirement in light of a New York case, *Orvis Co. v. Tax Appeals Tribunal*, 86 N.Y.2d 165, 178, 654 N.E.2d 954, 960-61, 630 N.Y.S.2d 680, 686-87 (1995), which stated that a substantial nexus requires a physical presence in the taxing state that " 'must be demonstrably more than a "slightest presence" [citation].' " *Brown's Furniture*, 171 Ill. 2d at 424, quoting *Orvis*, 86 N.Y.2d at 178, 654 N.E.2d at 961, 630 N.Y.S.2d at 687.

In *Orvis*, the New York Court of Appeals found that two out-of-state businesses had sufficient physical presences in New York to justify the imposition of use tax collection responsibilities. *Orvis*, 86 N.Y.2d at 180-81, 654 N.E.2d at 962, 630 N.Y.S.2d at 688. One of the businesses in *Orvis* sent its employees to New York on 41 occasions during a 3-year audit period to help customers with computer-related problems. The *Orvis* court found that these visits constituted a sufficient physical presence for commerce clause purposes, stating:

> "There was ample support in the record for the State Tax Appeals Tribunal's finding that [the company's] trouble-shooting visits to New York vendees and its assurances to prospective customers that it would make such visits enhanced sales and significantly contributed to [its] ability to establish and maintain a market *** in New York." *Orvis*, 86 N.Y.2d at 181, 654 N.E.2d at 962, 630 N.Y.S.2d at 688.

In *Brown's Furniture*, the court also found the physical presence requirement satisfied where a Missouri furniture retailer made 942 deliveries into Illinois in its own trucks over a 10-month audit period and advertised extensively in Illinois. *Brown's Furniture*, 171 Ill. 2d at 413-14. The court reasoned, in finding that Brown's Furniture satisfied the substantial nexus requirement, that "[t]hrough its deliveries, Brown's Furniture is physically present in Illinois on an almost continuous basis, directly competing with in-state retailers in establishing and maintaining a market for its furniture sales in Illinois." *Brown's Furniture*, 171 Ill. 2d at 425.

To further support its finding, the *Brown's Furniture* court also cited statutes from Virginia and Maine with explicit minimum requirements necessary to establish substantial nexus. See Va. Code Ann. § 58.1—612(C)(4) (Michie Supp. 1995) (out-of-state vendor subject to use tax collection when it delivers tangible personal property other than by mail or common carrier into the state more than 12 times

during a calendar year); Code Me. R. § 08—125 (sales tax section Rule 311 (1994) (out-of-state vendor subject to use tax collection when it delivers into the state at least 12 times in a calendar year).

■ We find that the facts in the present case, although not as extreme as those in *Brown's Furniture*, are still sufficient to meet the substantial nexus requirement of the *Complete Auto* test. Plaintiff used its own trucks to make 30 deliveries into Illinois during the 26-month audit period in question. Plaintiff only made 24 deliveries to Illinois by common carrier during that time. Although the deliveries were markedly less numerous than the Missouri retailer's in *Brown's Furniture*, they would be sufficient in number to satisfy the Maine and Virginia statutes referred to by the supreme court in support of its finding in that case. The frequency of plaintiff's presence in Illinois was also approximately equal to that of the business subjected to taxation in *Orvis*, which made only 41 visits to the taxing state over 36 months. In addition to the deliveries, plaintiff was also physically present in Illinois on five occasions during the audit period to deliver and install blinds or shades purchased from plaintiff's store.

By making deliveries into Illinois in its own vehicles, plaintiff has established a regular presence in Illinois that enhanced its ability to establish and maintain a market for its furniture sales. Plaintiff could have avoided use tax collection responsibilities in Illinois by merely restricting its deliveries in this state to common carriers or by refusing to deliver goods and supply services in Illinois. However, instead of using these safe harbors, plaintiff chose to send its own personnel into Illinois on multiple occasions and to reap the benefits from doing so. By repeatedly making deliveries and performing installations in Illinois, plaintiff's presence was demonstrably more than slight. Thus, we find there was a substantial nexus with plaintiff's activities and the State of Illinois, satisfying the first requirement of the *Complete Auto* test.

The fourth element of the *Complete Auto* test requires that the tax be fairly related to the services provided by the state. *Complete Auto*, 430 U.S. at 279, 51 L. Ed. 2d at 331, 97 S. Ct. at 1079. Plaintiff argues that this requirement is not met in the present case because the purchases upon which the taxes were levied were consummated in Wisconsin. However, we find that plaintiff's argument is without merit.

■ A tax can be fairly related to services provided by the taxing state where the sales giving rise to the tax are not consummated within the taxing state. See, *e.g., Brown's Furniture*, 171 Ill. 2d at 428-29 (fair-relation requirement met with respect to tax on items sold in Missouri and delivered into Illinois). The fair-relation requirement is satisfied as long as the measure of the tax is reasonably re-

lated to the taxpayer's presence or activities in the state. *Jefferson Lines*, 514 U.S. at 200, 131 L. Ed. 2d at 281, 115 S. Ct. at 1346. In *Brown's Furniture*, the court found the fourth requirement of the *Complete Auto* test satisfied where the Missouri furniture retailer was assessed use tax on sales of goods that were delivered into Illinois. *Brown's Furniture*, 171 Ill. 2d at 429. The court stated that the retailer benefitted from Illinois' public roads, police protection, a judicial system and other advantages conferred by the state's maintenance of a civilized society. *Brown's Furniture*, 171 Ill. 2d at 429.

■ In this case, the taxes in question were levied only on sales of goods that were delivered into Illinois. By making the majority of these deliveries in its own vehicles, plaintiff enjoyed the benefits of the state's roads, judicial system, and police protection. These benefits were related to the tax assessment at issue and were " 'justification[ ] enough for the collection of a tax.' " *Brown's Furniture*, 171 Ill. 2d at 429, quoting *Jefferson Lines*, 514 U.S. at 200, 131 L. Ed. 2d at 281, 115 S. Ct. at 1346.

Accordingly, we find that the application of the Use Tax Act to plaintiff satisfies the four prongs of the *Complete Auto* test. We therefore conclude that plaintiff has failed to establish a violation of the commerce clause.

Since we have already determined that the use tax assessed against plaintiff passes contemporary commerce clause scrutiny, we could also find that it is a foregone conclusion that the assessment satisfied due process scrutiny as well. The Supreme Court has stated that the " '*Complete Auto* test, while responsive to commerce clause dictates, encompasses as well *** due process requirement[s],' " so that taxes that satisfy the *Complete Auto* test will almost always survive due process challenges. *Quill*, 504 U.S. at 313 n.7, 119 L. Ed. 2d at 107 n.7, 112 S. Ct. at 1914 n.7, quoting *Trinova Corp. v. Michigan Department of Treasury*, 498 U.S. 358, 373, 112 L. Ed. 2d 884, 904, 111 S. Ct. 818, 828 (1991). Thus, we could decide that, because there exists a substantial nexus for commerce clause purposes, there is no question that the requirements of the due process clause have also been satisfied.

■ However, employing the analysis suggested in *Quill*, we will address separately why the limitations imposed by the due process clause have also been satisfied. The fourteenth amendment due process clause assures fundamental fairness in state taxation by insisting that taxpayers have notice and fair warning that a state may assess taxes against it. *Quill*, 504 U.S. at 312, 119 L. Ed. 2d at 106, 112 S. Ct. at 1913. The notice and fair warning requirements of the due process clause are met when a prospective taxpayer is shown to have "minimum

contacts" with a jurisdiction; that is, there must be " 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' " *Quill*, 504 U.S. at 306, 119 L. Ed. 2d at 102, 112 S. Ct. at 1909, quoting *Miller Brothers*, 347 U.S. at 344-45, 98 L. Ed. at 748, 74 S. Ct. at 539. Unlike the commerce clause's substantial nexus requirement, minimum contacts for due process purposes may be established even where a prospective taxpayer has no physical presence in the taxing state. *Quill*, 504 U.S. at 308, 119 L. Ed. 2d at 104, 112 S. Ct. at 1911.

■ The record in this case shows that plaintiff had at least some minimum connection with Illinois during the audit period. By making 30 deliveries into Illinois in its own vehicles and installing blinds or shades in Illinois on five occasions, plaintiff exploited Illinois' consumer furniture market. Plaintiff's success in this effort is illustrated by the fact that, during the sampling period, more than half of plaintiff's gross sales constituted sales of merchandise delivered into Illinois. Plaintiff's extensive sales of items delivered into Illinois, coupled with its regular physical presence here, provide sufficient grounds for concluding that plaintiff has successively availed itself of Illinois' consumer markets.

Plaintiff points out that it did not solicit Illinois customers through advertising or otherwise, and claims that a retailer may not, consistent with due process requirements, be made to collect use taxes unless it solicits sales within the taxing state. Such a rule cannot be distilled from the case law. The only broad rule the Supreme Court has laid down in this area is that the business against which a tax is sought to be assessed must have some minimum contacts with the taxing jurisdiction. See *Quill*, 504 U.S. at 307-08, 119 L. Ed. 2d at 103-04, 112 S. Ct. at 1910-11. This rule has never been found to hinge on whether the business engaged in solicitations in the taxing state.

Thus, for example, in *Standard Pressed Steel Co. v. Department of Revenue*, 419 U.S. 560, 561-62, 42 L. Ed. 2d 719, 722, 95 S. Ct. 706, 708 (1975), the Supreme Court rejected a due process challenge to a Washington tax scheme where the taxpayer's only connection to the state came in the form of a full-time employee who lived in Washington and who consulted with one of the taxpayer's customers. Although the employee engaged in no solicitations, the Court sustained the tax because his presence in Washington made possible the realization and continuance of valuable contractual relations between the taxpayer and its customer. *Standard Pressed Steel*, 419 U.S. at 562, 42 L. Ed. 2d at 722, 95 S. Ct. at 708.

*Standard Pressed Steel* illustrates that solicitation is not a necessary condition for the establishment of due process nexus. To be sure,

a company that actively solicits sales from a state's residents will have a difficult time showing that it lacks sufficient contacts with the state for due process purposes, at least in the use tax context. *Quill*, 504 U.S. at 308, 119 L. Ed. 2d at 104, 112 S. Ct. at 1911. However, solicitation is not the only method by which businesses exploit consumer markets. A ruling to the contrary would be a considerable and unwarranted extension of the Supreme Court's precedents. Therefore, we reject plaintiff's contention that due process requirements cannot be met unless a retailer engages in solicitation in the taxing state.

Plaintiff also relies heavily on *Miller Brothers Co. v. Maryland*, 347 U.S. 340, 98 L. Ed. 744, 74 S. Ct. 535 (1954), arguing that the case has retained its vitality despite almost four decades of intervening case law which has significantly altered the landscape of due process jurisprudence. Although *Miller Brothers* has never been overruled, its continued authority is in serious doubt, at least in the eyes of the Illinois Supreme Court. *Brown's Furniture*, 171 Ill. 2d at 426. At a minimum, the *Miller Brothers* Court's finding that due process requires something more than a slight physical presence within the taxing jurisdiction has not survived *Quill*, 504 U.S. at 308, 119 L. Ed. 2d at 104, 112 S. Ct. at 1911, which held that due process may be satisfied even where the taxpayer had no physical presence within the taxing state. *Brown's Furniture*, 171 Ill. 2d at 426.

Further, whatever remains of *Miller Brothers*, it is distinguishable from the present case. In both *National Geographic Society v. California Board of Equalization*, 430 U.S. 551, 561-62, 51 L. Ed. 2d 631, 640-41, 97 S. Ct. 1386, 1393 (1977), and *Scripto, Inc. v. Carson*, 362 U.S. 207, 212-13, 4 L. Ed. 2d 660, 664-65, 80 S. Ct. 619, 622 (1960), the Court distinguished *Miller Brothers* on the grounds that the Maryland tax at issue was levied upon items purchased over-the-counter at Miller Brothers' Delaware store. The lack of certainty that those items were to be used in Maryland "militated against a finding of adequate nexus with respect to those purchases." *National Geographic Society*, 430 U.S. at 562, 51 L. Ed. 2d at 641, 97 S. Ct. at 1393.

In the present case, the Department assessed the use tax against only plaintiff's sales of items delivered into Illinois. In addition, the record shows that plaintiff had a policy of imposing a 5% handling fee on sales with out-of-state deliveries, which shows that it was able to distinguish between in-state and out-of-state purchases. In light of these facts, the *Miller Brothers* Court's concern with uncertainty regarding where the items were to be used is absent here. This distinction, together with *Miller Brothers'* questionable vitality and plaintiff's contacts with Illinois, provides a sufficient basis for this court to reject plaintiff's due process challenge. Therefore, we find that the requirements of due process were met by the Department in this case.

Since there are no genuine issues of material fact, we find that the Department was entitled to summary judgment as a matter of law. Thus, we affirm the order of the circuit court granting the Department's motion for summary judgment.

Affirmed.

THEIS, P.J., and HARTMAN, J., concur.