THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CRAIG A. HANNA *et al.*, Defendants-Appellees.

Fifth District    No. 5—01—0360

Opinion filed July 2, 2002.—Rehearing denied August 12, 2002.

Charles Garnati, State's Attorney, of Marion (Norbert J. Goetten, Stephen E. Norris and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

John R. Patchett, of Patchett Law Office, of Marion, for appellees.

JUSTICE WELCH delivered the opinion of the court:

Four cases were consolidated in the circuit court of Williamson County for the purpose of hearing, and deciding, the defendants' motions to suppress the results of breathalyzer machine testing in their prosecutions for driving under the influence of alcohol. The circuit court of Williamson County granted the defendants' motions to suppress, and the State filed certificates of impairments and notices of appeal. Those cases remain consolidated for this appeal.

Each of the four defendants in this appeal was stopped and tested on a breathalyzer machine. The machines involved are known as the Intoxilyzer 3000 and the Intoxilyzer 5000. In each case, the reading from the machine indicated that the defendant's blood-alcohol content was far above the legal limit. Each defendant filed a motion to suppress the breath-analysis result, claiming that the machine had not been properly tested by the Illinois Department of Public Health (Department), as required by an Illinois regulation, prior to being approved for use in the field. The regulation in question required each breathalyzer machine to meet the following requirement prior to its use in the field:

"[Breathalyzer machines] *** will be tested and approved by the Department in accordance with but not limited to the Standards for Devices to Measure Breath Alcohol promulgated by the National Highway Traffic Safety Administration, U.S. Department of Transportation ***." 77 Ill. Adm. Code § 510.40(c) (2000) (repealed, eff. January 1, 2001 (25 Ill. Reg. 223)) (see Pub. Act 91—828, eff. January 1, 2001 (transfers responsibility from Department of Public Health to Department of State Police)).

The standards promulgated by the National Highway Traffic Safety Administration (NHTSA) provide for, among other tests, tests for input power variation, ambient temperature stability, and vibrational stability. It is undisputed that these three tests were not performed by the Department prior to the Department's approval of the Intoxilyzer 3000 and the Intoxilyzer 5000 for use in the field. It is also undisputed that these tests were conducted on the Intoxilyzer 3000 and the Intoxilyzer 5000 by the NHTSA in accordance with its own standards

and that these machines had been approved for field use by that agency.

The circuit court of Williamson County, in a consolidated order dated May 15, 2001, stated as follows:

"The issue to be decided in these cases is whether the Illinois Department of Public Health regulations required the Department to conduct its own tests for input voltage stability, ambient temperature stability[,] and vibrational stability for all machine models before placing the machine model on the Illinois[-]approved list, or did the regulations allow the Department to rely upon the NHTSA tests for input voltage stability, ambient temperature stability[,] and vibrational stability in the Department's testing and approval process[?]"

In discussing the Department regulation in question (77 Ill. Adm. Code § 510.40(c) (2000)), the court stated:

"This section uses simple, clear[,] and concise language. This section has no ambiguity. This section requires the Department to test and approve all machines '*** in accordance with but not limited to the Standards for Devices to Measure Breath Alcohol promulgated by the National Highway Traffic Safety Administration ***.' The Department did not conduct the required testing before placing the Intoxilyzer 3000 and the Intoxilyzer 5000 on the list of approved models for use in Illinois as Approved Breath Testing Instruments."

The court concluded, "Therefore, the machines were not properly approved for use in Illinois pursuant to regulations."

In rejecting the State's arguments that the Department could rely on the results of the NHTSA testing and that duplicative testing by the Department was unnecessary and redundant, the trial court found as follows:

"According to the express language of the Illinois Department of Public Health's Regulation[,] all of this NHTSA testing and approval is irrelevant. The Department chose to not rely upon or accept the results of this NHTSA testing. The Department could have chosen to rely upon the testing and results of NHTSA. The regulation could have been written so as to clearly allow the Department to use the NHTSA results. For whatever reason, the Department chose to require its own testing to be conducted. This testing had to be in compliance with the NHTSA requirements. Input voltage stability, ambient temperature stability[,] and vibrational stability testing is required by the NHTSA regulations. The Illinois Department of Public Health was required to conduct these tests before placing any models on the Illinois List of Approved Breath Testing Instruments. The Department did not do this, so the In-

toxilyzer 3000 and the Intoxilyzer 5000 were not properly tested and approved by the Department. As such[,] individual machines for those models could not be used for the testing of breath alcohol in these consolidated cases."

Accordingly, the trial court granted the defendants' motions to suppress the results of the breathalyzer machine tests of their breath.

■ We quote from the trial court's order at length because we could not agree more and could not express our opinion any better. The issue involved here is simply one of statutory construction: What does the Department's regulation say and what does it mean? Administrative regulations have the force and effect of law and are construed under the same standards that govern the construction of statutes. *Exhibits, Inc. v. Sweet*, 303 Ill. App. 3d 423, 427 (1998). For the sake of simplicity, we will use the terms "regulation" and "statute" interchangeably. Whether the trial court has correctly interpreted a regulatory or statutory provision is a question of law, and accordingly, our review is *de novo*. *In re D.D.*, 196 Ill. 2d 405, 418 (2001).

■ When a court determines legislative intent, the starting point is always the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting the particular law. *In re D.D.*, 196 Ill. 2d at 419. The language of the statute must be given its plain and ordinary meaning. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). Where the statutory language is clear and unambiguous, it will be given effect without resort to other interpretive aids. *People v. Maggette*, 195 Ill. 2d 336, 348 (2001). Only when statutory language is ambiguous may a court look beyond the language and resort to extrinsic aids of construction. *In re D.D.*, 196 Ill. 2d at 419. A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *In re B.C.*, 176 Ill. 2d 536, 543 (1997).

■ We agree with the trial court that the language of the regulation is clear and unambiguous. It is not capable of being reasonably interpreted in two different ways. The regulation provides that all breathalyzer machines "*will be tested* and approved *by the Department* in accordance with but not limited to" the standards promulgated by the NHTSA. (Emphasis added.) 77 Ill. Adm. Code § 510.40(c) (2000). By its plain language, the regulation clearly requires testing by the Department. By its plain language, it does not allow the Department to rely on testing conducted by the NHTSA.

The State argues that it was the intent of the regulation to allow the State to rely on the testing done by the NHTSA and that it may be interpreted that way. We see no such indication in the plain

language of the regulation. Because the regulation is not ambiguous and its meaning can be determined from its plain language, it is not necessary to, and neither the trial court nor this court may properly, consider extrinsic evidence to aid in the construction of the regulation. Thus, we need not, and may not, consider the testimony of Larry D. Etzkorn, division chief in charge of the alcohol- and substance-testing program for the Department. Etzkorn had testified that, in drafting the regulation, he never intended to require testing for input voltage stability, ambient temperature stability, and vibrational stability.

The State posits a convoluted argument that, because the Illinois regulation requires testing in accordance with the federal standards and regulations and because the federal regulations do not require states to do any testing but only recommends that they do so, the Department was not *required* to do any testing but could rely on testing done by the NHTSA. We wonder—If this is what the Department intended when it drafted the regulation, why did it not just say so? The plain language of the regulation belies the State's argument.

The State also argues that the regulation's language, "in accordance with *but not limited to*" (emphasis added), was intended to give and did give the Department discretion to use a testing program different from that used by the NHTSA. We agree that the language "but not limited to" allows the Department to do testing in addition to that required by the federal regulations. We do not agree that it allows the Department to do *less* testing than required by the federal regulations. The words "but not limited to," at least in the context of this regulation, are words of addition, not words of subtraction. They allow the Department to do additional testing; they do not allow the Department to omit testing altogether.

Finally, the State argues that the trial court's construction of the regulation will require the Department to needlessly duplicate testing already done by the NHTSA and, more importantly, will result in invalidating every breath-analysis machine now in use in Illinois. The State argues that, as a result, enforcement of the laws against drunk driving will be virtually impossible. We will not fall prey to the State's scare tactics for two reasons. First, a court may not, under the guise of statutory construction, "correct" an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language. *Pullen*, 192 Ill. 2d at 42. Second, the regulation has been amended to eliminate any requirement that Illinois authorities test breathalyzer machines; instead, any machine on the NHTSA-approved list may be approved for use in Illinois. 20 Ill. Adm. Code § 1286.210 (2001).

The breathalyzer machines used to test the defendants' breath in

the instant cases were not properly tested by the Department and were therefore not properly approved by the Department for use in the field. The results of those tests are therefore not admissible under section 11—501.2(a)(1) of the Illinois Vehicle Code (625 ILCS 5/11—501.2(a)(1) (West 2000)). The trial court did not err in granting the defendants' motions to suppress the results of their breathalyzer machine tests.

For the foregoing reasons, the judgment of the circuit court of Williamson County is hereby affirmed, and this cause is remanded for further proceedings.

Affirmed; cause remanded.

GOLDENHERSH and KUEHN, JJ., concur.