LARRY WALLIS *et al.*, Plaintiffs-Appellants, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Second District    No. 2—99—0023

Opinion filed January 4, 2000.—Rehearing denied February 10, 2000.

Michael L. Childress and Edward Eshoo, Jr., both of Childress & Zdeb, Ltd., of Chicago, for appellants.

Rickey L. Hammond and Justine D. Cody, both of Chuhak & Tecson, P.C., of Chicago, for appellee.

JUSTICE RAPP delivered the opinion of the court:

This case arises out of an insurer's refusal to pay a claim for water damage to an insured's house. Plaintiffs, Larry and Mae Wallis, brought a two-count complaint against defendant, Country Mutual Insurance Company, alleging breach of contract and vexatious refusal to pay a claim. Summary judgment was granted in favor of defendant. Plaintiffs timely appeal (see 155 Ill. 2d Rs. 301, 303), arguing that summary judgment was improper because defendant failed to prove that damage to plaintiffs' house resulted from a peril excluded from the all-risk homeowner's insurance policy. We disagree with plaintiffs and affirm.

## I. FACTS

The following facts gleaned from the record are germane to our disposition and are undisputed. Other facts of more limited relevancy will be discussed only where necessary.

Plaintiffs own and reside in a single-story house with an attached garage located on four acres of land in rural Plano, Illinois. The house

sits on a four-foot-deep foundation that forms a crawl space beneath the living quarters. The "Rob Roy Creek" runs behind and along one side of the property. The creek is approximately 150 feet from plaintiffs' house, at its nearest point. The creek was not forged by nature. Instead, it is a long-existing, man-made irrigation channel serving adjacent farmland. Surface water runoff from the adjacent lands generally accounts for the accumulation of water in the creek. The creek runs dry for only short periods, if at all, during the summer months.

On July 18, 1996, a severe thunderstorm struck the area in and around Plano, dumping a remarkable amount of rain in a matter of hours. According to plaintiffs, they were awakened in the early morning hours by the heavy rain, thunder, and lightning. Power to the house was out. Through the darkness, plaintiffs noticed a large quantity of water collecting in their backyard.

Heavy rains continued throughout the morning. More and more water collected in the backyard. Soon, the creek overflowed its banks, causing a rush of water to gush into the garage. Eventually the crawl-space under the house was inundated. Before long, water entered the house's living quarters. At its peak, the water reached eight inches above floor level in every room. The house and some of its contents sustained extensive damage.

At the time of the storm, an all-risk homeowner's insurance policy issued by defendant was in effect. The policy "insure[d] [plaintiffs'] property against perils" except for loss resulting directly or indirectly from certain specified exclusions, including:

"[W]ater damage, meaning: (a) flood, surface water (including water flowing naturally on or near the surface and water whose flow is artificially altered), waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; (b) water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well, or other type system designed to remove subsurface water which is drained from the foundation area; or (c) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure."

Despite this exclusion, plaintiffs filed a claim under the policy. In a letter sent to plaintiffs, defendant denied the claim based upon the water damage exclusion. Plaintiffs applied for and received emergency financial assistance in the amount of $6,900 from the Federal Emergency Management Agency (FEMA).

Plaintiffs subsequently sued defendant, seeking damages for fail-

ure to pay the claim. Defendant answered the complaint and asserted an affirmative defense alleging that plaintiffs' loss resulted from a peril specifically excluded from the policy. Depositions were conducted. During plaintiffs' depositions, they repeatedly referred to the water accumulation in their house as a flood.

After completion of discovery, defendant moved for summary judgment based upon the policy's water damage exclusion. Copies of the original policy, an amendatory endorsement to the policy, and transcripts of plaintiffs' depositions were attached to the motion. Plaintiffs filed a cross-motion for summary judgment on the issue of liability. The trial court granted defendant's motion and denied plaintiffs' cross-motion and their motion to reconsider. Plaintiffs timely appeal, arguing that summary judgment was improperly granted in favor of defendant.

## II. DISCUSSION

In deciding whether summary judgment was proper, we consider two issues. The first concerns the respective burdens of proof in a lawsuit for an insurer's failure to pay a claim under an all-risk insurance policy. The second concerns whether the record in this case clearly establishes that the damage to plaintiffs' house was caused by a peril expressly excluded from coverage and requires us to construe the policy's water damage exclusion. Initially, however, we note the proper scope and standard of review on appeal from an order granting summary judgment.

### A. Scope and Standard of Review

Though summary judgment is a drastic means of disposing of litigation (*Janes v. Centegra Health System*, 308 Ill. App. 3d 779, 784 (1999)), it is appropriate if two elements are present. First, the pleadings, depositions, and admissions on file, together with any affidavits, must reveal an absence of a genuine issue of material fact concerning the subject of the motion *and*, second, the undisputed facts must entitle the movant to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). When adjudicating a summary judgment motion, facts must be construed liberally in favor of the opposing party and the movant's entitlement to summary judgment must be clear and free from doubt. *Janes*, 308 Ill. App. 3d at 784-85. Reviewing whether summary judgment was proper raises a question of law to which we apply a *de novo* standard of review (*Hinterlong v. Baldwin*, 308 Ill. App. 3d 441, 445 (1999)). We now turn to the merits of this appeal, addressing first the respective burdens of proof under an all-risk insurance policy in the context of a motion for summary judgment.

## B. Burdens of Proof Under an All-Risk Insurance Policy in the Context of a Motion for Summary Judgment

■ To withstand a motion for summary judgment in a lawsuit for an insurer's failure to pay a claim under an all-risk insurance policy, the insured bears the initial burden of presenting, through the papers on file, sufficient facts establishing a *prima facie* case. *Harbor House Condominium Ass'n v. Massachusetts Bay Insurance Co.*, 703 F. Supp. 1313, 1317 (N.D. Ill. 1988). This requires a showing (1) that a loss occurred, (2) that the loss resulted from a fortuitous event (*Harbor House*, 703 F. Supp. at 1317), and (3) that an all-risk policy covering the property was in effect at the time of the loss (*Great Northern Insurance Co. v. Dayco Corp.*, 620 F. Supp. 346, 351 (S.D.N.Y. 1985)). Contrary to defendant's assertion, an insured covered by an all-risk insurance policy need not prove the exact cause of the loss nor disprove any excluded perils in order to establish a *prima facie* case. See *Rutgens Distributors, Inc. v. United States Fidelity & Guaranty Co.*, 94 Ill. App. 3d 753, 757 (1981).

In this case, the papers on file with the trial court reveal undisputed facts demonstrating that plaintiffs established a *prima facie* case. There is no doubt that plaintiffs suffered a loss when their house sustained extensive water damage. The loss resulted from a fortuitous event. Water does not normally collect in the living quarters of a residence except in bathtubs, showers, sinks, and toilets. The water that collected in the house happened by chance or accident and was unexpected. Finally, the all-risk policy issued to plaintiffs was in effect at the time the house sustained damage. Still, the fact that plaintiffs established a *prima facie* case does not automatically preclude summary judgment in favor of defendant.

Once an insured establishes a *prima facie* case, the burden then shifts to the insurer to show that the loss resulted from a peril expressly excluded from coverage. See *International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co.*, 209 Ill. App. 3d 144, 148 (1990); see also *Wilson v. National Automobile & Casualty Insurance Co.*, 22 Ill. App. 2d 34, 37 (1959). If the insurer meets this burden through the presentation of undisputed facts, summary judgment is appropriate. Plaintiffs do not dispute the facts of this case and, indeed, the record reveals no genuine issue of material fact. Rather, plaintiffs argue that defendant has not met its burden as a matter of law.

Plaintiffs contend that the damage caused to their house was not "water damage" as defined in the insurance policy. Specifically, plaintiffs maintain that the eight inches of water that collected in their house resulted from neither flood or surface water nor back-up from a sewer or drain. Therefore, according to plaintiffs, defendant

can never meet its burden of proving the loss resulted from an excluded peril. Defendant counters that, given the undisputed facts of this case, the trial court properly concluded that plaintiffs' house sustained water damage as defined in the insurance policy. Therefore, plaintiffs' loss was excluded from coverage. For the following reasons, we agree with defendant.

## C. Whether Plaintiffs' Loss Was Caused by "Water Damage"

According to plaintiffs, defendant can never meet its burden of showing that the loss resulted from "water damage" because damage to the house was not caused by a flood, surface water, or back-up from a sewer or drain as those terms are used in the insurance policy. Alternatively, plaintiffs argue that the terms are ambiguous. In the words of William Shakespeare, plaintiffs' argument is "much ado about nothing."

Resolution of this issue requires construction of the water damage exclusion of the insurance policy. Because insurance policies are contracts, the well-known rules of contract construction apply. *Pekin Insurance Co. v. Willett*, 301 Ill. App. 3d 1034, 1037 (1998). When construing an insurance policy it is our duty to ascertain and give effect to the intent of the parties. *Willett*, 301 Ill. App. 3d at 1037. The best indicator of the parties' intent is the language used in the agreement. See *Willett*, 301 Ill. App. 3d at 1037. The parties' intentions must be enforced as written unless they are ambiguous or enforcement contravenes public policy. *Willett*, 301 Ill. App. 3d at 1037. However, interpretation of policy language does not take place in a vacuum (*Massachusetts Bay Insurance Co. v. Unique Presort Services, Inc.*, 287 Ill. App. 3d 741, 744 (1997)); the language must be read with reference to the facts at hand and in conjunction with the insured's reasonable expectations and the coverage intended by the policy. *American Family Mutual Insurance Co. v. Hinde*, 302 Ill. App. 3d 227, 232 (1999). Clear and unambiguous policy language must be given its plain and ordinary meaning (*Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 642 (1999)), not a distorted meaning in order to reach a desired result (*Economy Preferred Insurance Co. v. Ingold*, 302 Ill. App. 3d 360, 362 (1998)). The policy language and the undisputed facts of this case convince us that plaintiffs' loss resulted from a flood.

■ The all-risk insurance policy issued to plaintiffs covered all losses except for losses resulting directly or indirectly from, among other things, "water damage, meaning: (a) flood." This language is unambiguous. It clearly precludes coverage for damage caused by a flood. Plaintiffs nevertheless argue that the water which entered their house did not result from a flood. Instead, plaintiffs contend that

because the water resulted from the overflow of a man-made watercourse it was not "a flood" as that term has been previously interpreted.

The term "flood" is not defined in the policy; therefore, we defer to its plain and ordinary meaning. The common meaning of a flood is "a rising and overflowing of a body of water that covers land not usu-[ally] under water." Webster's Third New International Dictionary 873 (1993). Water from a flood is termed "floodwater" which means, "[w]ater that escapes from a watercourse in large volumes and flows over adjoining property in no regular channel." Black's Law Dictionary 1585 (7th ed. 1999).

In this case, the storm that struck Plano in July 1996 caused the creek adjoining plaintiffs' property to overflow. The large volume of water that escaped from the creek covered land not normally covered by water, including the inside of plaintiffs' house. The heavy downpour did not allow the accumulated water to adequately drain along normal channels. Moreover, in their depositions, plaintiffs repeatedly referred to the water that collected in their house as a flood. Plaintiffs, as well as others in the Plano area, received "flood" assistance from FEMA. Based on the record before us, we have no doubt that plaintiffs readily understand the plain and ordinary meaning of the term "flood." Plaintiffs' house sustained damage as a result of a flood.

Nonetheless, plaintiffs invite us to distort the meaning of the term "flood" in order to reach their desired result. Because the term "flood" in the context of an insurance policy's exclusionary language has not previously been defined in Illinois, we will engage plaintiffs' argument.

Plaintiffs contend that the water that inundated their house was not a flood because it escaped from a man-made watercourse. In plaintiffs' view, a flood can only result from the overflow of a natural watercourse. Further, plaintiffs contend that, even if we find a man-made watercourse can cause a flood, their interpretation is equally reasonable and therefore the term is ambiguous as written. We reject both contentions.

Plaintiffs rely on *Sun Underwriters Insurance Co. v. Bunkley*, 233 S.W.2d 153 (Tex. Civ. App. 1950), *Ferndale Development Co. v. Great American Insurance Co.*, 34 Colo. App. 258, 527 P.2d 939 (1974), and *O'Neill v. State Farm Insurance Co.*, No. 94—3428 (E.D. Pa. April 7, 1995) (not reported in F. Supp.), to support their argument. We are unpersuaded by *Bunkley* and *Ferndale Development*, and we strike *O'Neill* from both parties' briefs because it is unpublished and therefore nonprecedential. We admonish plaintiffs and defendant for citing *O'Neill* in derogation of Supreme Court Rule 23(e) (166 Ill. 2d R. 23(e)) and Rules 53 (b)(2)(iv) and 53 (e) of the United States Court of Appeals for the Seventh Circuit (7th Cir. Rs. 53(b)(2)(iv), (e)).

In *Bunkley*, several thousand chickens drowned following heavy rains that caused four inches of water to accumulate in two chicken houses. At one end of the chicken houses there was a depression in which water collected. The depression was only slightly lower than the area around it. It was not a ditch or a creek and it did not have banks. The insurance policy issued to the insured covered against loss caused by, among other things, " 'Flood (meaning the rising of natural bodies of water).' " *Bunkley*, 233 S.W.2d at 154. The policy did not protect against loss resulting from an inundation of surface water. In other words, the policy was not an all-risk policy but instead a named-risk policy. At trial, the insured argued that the depression near the chicken houses was a natural watercourse and thus water overflowing from it constituted a flood. The trial court agreed, ruling in favor of the insured, and the insurer appealed.

The appellate court reversed, holding that the insured's loss did not result from a flood but instead resulted from an excessive flow of surface water, a peril not covered by the policy. *Bunkley*, 233 S.W.2d at 156. In reaching its decision, the appellate court noted that " '[i]f there is a channel, consisting of a well-defined bed with visible banks, down which water flows recurrently, there is a natural watercourse, though it be dry for months at a time.' " *Bunkley*, 233 S.W.2d at 155, quoting 44 Tex. Jur. *Water* § 7.

Our case is different from *Bunkley* in two significant ways. First, *Bunkley* dealt with a named-risk insurance policy. That means the insured had the burden of establishing that the loss sustained resulted from a peril specifically covered under the policy. In *Bunkley*, flooding was a peril specifically covered by the policy. The *Bunkley* court found that the insured did not prove the loss resulted from a flood because the inundation of water did not result from a watercourse overflowing its banks. Second, contrary to plaintiffs' argument in this case, *Bunkley* does not hold that a flood can result only from the overflow of a natural watercourse as opposed to a man-made watercourse. Instead, *Bunkley* simply defines a natural watercourse as a channel with a defined bed and visible banks down which water flows recurrently. In other words, if a permanent, man-made watercourse has a defined bed, visible banks, and a recurrent flow of water, it should be considered a natural watercourse if it has been maintained for a sufficient length of time. See Black's Law Dictionary 1586 (7th ed. 1999); see also 78 Am. Jur. 2d *Waters* § 196 (1975). Here, the "Rob Roy Creek," although man-made, has all the characteristics and incidents of a natural watercourse.

Plaintiff Larry Wallis testified in his deposition that the creek has existed for a very long time. In fact, he recalled his grandfather swim-

ming in "that little creek." The creek is a permanent watercourse. The creek also has a defined bed, visible banks, and a recurrent flow of water. Mr. Wallis testified that "if you are standing in the creek and you are in the water you cannot see the top of the bank." When asked whether the creek ever ran dry, Mr. Wallis responded, "[i]t comes real close, but I don't think[—]I think there is always water running through it, but it comes real close." For the purpose of defining the term "flood" under the water damage exclusion in plaintiffs' homeowner's policy, we find plaintiffs' attempt to characterize the "Rob Roy Creek" as an artificial source of water unavailing. See 11 Couch on Insurance § 153:55 (3d ed. 1998).

*Ferndale Development* is as unpersuasive as *Bunkley*. In *Ferndale Development*, the court was faced with the question of whether water damage to the insured property that resulted from a water-main break constituted a flood or surface water as those terms were used in the water damage exclusion of the policy issued to the insured. The court concluded that the exclusion did not apply because the term "flood" as used in the policy was ambiguous. *Ferndale Development*, 34 Colo. App. at 260, 527 P.2d at 940. According to the court, the ambiguity arose from the difference between a water inundation resulting from the bursting of an artificial structure (such as a water main) and the overflow of a "natural" watercourse. *Ferndale Development*, 34 Colo. App. at 260, 527 P.2d at 940. The court did not distinguish between a man-made watercourse, such as an irrigation channel, and a watercourse forged from nature. We acknowledge that under some circumstances, such as those in *Ferndale Development*, the term "flood" may result in ambiguity; however, under the facts of this case no ambiguity exists. *Ferndale Development* is simply inapplicable. The rupture of a man-made water main is undisputably different from the overflow of a "natural" watercourse.

We hold that the definition of flood as used in the water damage exclusion of plaintiffs' homeowner's policy should be given its plain and ordinary meaning—water that escapes from a watercourse in large volumes and flows over adjoining property in no regular channel ending up in an area where it would not normally be expected. Simply because the watercourse from which the water escapes was originally man-made is of no consequence if the watercourse has a defined bed, visible banks, and a recurrent water flow. The watercourse adjoining plaintiffs' property meets these criteria. Hence, the water overflowing the creek's banks and ending up in plaintiffs' house constitutes a flood under the plain and ordinary meaning of that term.

We do not hold, as defendant urges, that inundation of water from all man-made sources results in a "flood." As stated in Couch on Insurance:

"As far as the owner of property is concerned, an item of property which is rendered useless by water is damaged to the same degree whether the offending water derived from a leaking bathroom supply pipe or a flood which ravages entire areas of a state. These are very different events in the eyes of insurers, however, and in terms of property damage attributed to water, insurers have consistently distinguished between water in the two major forms that it is encountered in life—

1. The water that exists in nature[—]rainfall, streams, lakes, and larger bodies of water[—]even if this natural water is in some respect controlled by man, via dams and efforts to create man-made lakes and the like.

2. Water which is present solely because of the efforts of man to use it in every day life, such as supplying water for drinking, bathing, and the like; use in air conditioning, sprinkler systems, and similar devices; and transport of sewage and the like.

Insurance against 'nature's' water damage is generally provided by specific flood and rain insurance policies or clauses ***; water damage from controlled water usages is generally addressed by the terms of broader insurance coverage ***." 11 Couch on Insurance § 153:51 (3d ed. 1997).

As we previously stated, if an insurer meets its burden of establishing that an insured's loss resulted from any peril specifically excluded from an all-risk insurance policy, summary judgment in favor of the insurer is appropriate. Therefore, because we have determined that plaintiffs' loss resulted from a flood, which is a peril specifically excluded from their homeowner's insurance policy, we need not address plaintiffs' other arguments. Summary judgment was properly granted in favor of defendant.

## III. CONCLUSION

For the forgoing reasons the summary judgment entered in favor of defendant by the circuit court of Kendall County is affirmed.

Affirmed.

McLAREN and GEIGER, JJ., concur.