7 July 2000

No. 2--99--0708

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

STUART L. WHITT and REBECCA A. ) Appeal from the Circuit Court

WHITT,                         ) of Kane County.

                               )

Plaintiffs and )

Counterdefendants-Appellees, )                       

)

v.                             ) No. 96--L--0586         

                               ) 

STATE FARM FIRE AND CASUALTY     )                  

COMPANY,                       ) Honorable

                          ) Patrick J. Dixon and

     Defendant and       ) Pamela K. Jensen,

Counterplaintiff-Appellant. ) Judges, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Defendant and counterplaintiff, State Farm Fire and Casualty Company (State Farm), appeals from the trial court's grant of summary judgment in favor of plaintiffs and counterdefendants, Stuart L. and Rebecca A. Whitt, and the court's denial of its motion for summary judgment.  We reverse.

State Farm provided homeowners' insurance to the Whitts since 1977.  On July 17-18, 1996, a massive rainstorm dropped almost 17 inches of rain in the Aurora, Illinois, area.  During that storm, water entered the Whitts' home in Aurora around the basement window casings, through a hole in the furnace room wall, under doors to the house and the garage, and through the roof and a skylight.  Eventually, water filled the entire basement of the home and the first floor to a depth of over four feet.  The Whitt family left the home via boat and canoe.

The Whitts filed a claim with State Farm under the homeowners' policy then in effect.  On August 10, 1996, State Farm paid the Whitts $1,432.86 for water damage resulting from rain entering the home through the roof and skylight.  However, coverage was denied for the remainder of the claim.

On November 27, 1996, the Whitts filed a six-count complaint against State Farm and their State Farm agent, seeking to recover for the water damage to their home.  Counts I through V were brought against State Farm alleging breach of contract (count I), estoppel (count II), consumer fraud (count III), common-law fraud (count IV), and bad faith (count V).  Count VI alleged negligence against the Whitts' insurance agent. State Farm filed a counterclaim seeking a declaratory judgment that the Whitts' homeowners policy did not provide coverage for the water damage alleged in the Whitts' complaint and that State Farm was not obligated to pay for water damage to the Whitts' home.  After an exchange of discovery, the Whitts and State Farm filed cross-motions for summary judgment.  The trial court denied State Farm's motion but granted the Whitts' motion for summary judgment as to the counterclaim, ordering that State Farm was estopped from asserting the water damage exclusion of the homeowners' policy in the cause of action.  The Whitts' motion for summary judgment as to counts I, II, III, and V of their complaint was denied.  State Farm's motion to reconsider was denied, and, on May 24, 1999, the trial court entered a final order of judgment on counts I and II of the Whitts' complaint in the principal amount of $168,377.  Counts III through VI were dismissed with prejudice.  This appeal followed.

The homeowners' policy at issue provided in relevant part:

"2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

***

c. 
Water Damage
, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2)
 water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured."

In his deposition, Stuart Whitt testified that he received a brochure describing the "State Farm Homeowners Extra" (Homeowners Extra) insurance policy in 1982, when he and his wife purchased the home involved in this case.  Stuart testified that he looked at the picture on the front of the brochure and, inside the brochure, at drawings of the different coverages provided by Homeowners Extra and the captions beneath them.  The brochure contained a series of 35 captioned drawings depicting the coverages contained in the Homeowners Extra policy.  The only water-related pictures included in this series were "Water damage," which depicts rain falling through an open window and puddling on a floor; "Windstorm, Hail"; "Weight of ice, snow or sleet"; "Freezing of plumbing system"; "Tearing or bulging of water heating appliances"; and "Water escape from plumbing, heating, air conditioning systems or household appliances."  Immediately below the series of drawings, in bold black print larger than the print used in the captions, the brochure stated:

"
This brochure contains only a general description of coverages and is not a statement of contract.  All coverages are subject to the exclusions and conditions in the policy itself.
"

Stuart was unsure if he had read that statement.  He was sure that he did not read the language on the next page, wherein the brochure provided:

"And, you have comprehensive all-risk protection against loss from practically any cause (except a few such as normal wear and tear, deterioration, vermin, rodents, war, radiation, smog, settling, flood, earthquake, landslide, backing up of sewers and drains)."

The trial court found that the word "flood" contained in the brochure was "at best ambiguous as it applies to rain produced surface water infiltration and therefore is insufficient for the purpose of notifying the plaintiff of a limitation as to damage caused by surface water in a policy otherwise extending comprehensive coverage."

State Farm first contends that the trial court erred in finding the term "flood" to be ambiguous and granting the Whitts' motion for summary judgment.  Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, demonstrate that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  
McNamee v. State
, 173 Ill. 2d 433, 438 (1996).  A court considering a summary judgment motion must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmovant.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 131-32 (1992).  Summary judgment should be granted only where the movant's right to judgment is clear and free from doubt; it should be denied where a reasonable person could draw divergent inferences from undisputed facts.  
Outboard Marine
, 154 Ill. 2d at 102.  On appeal, summary judgment rulings are given a 
de novo
 review.  
Outboard Marine
, 154 Ill. 2d at 102.

The court's primary purpose in construing an insurance contract is to give effect to the intent of the parties, which must be determined from the language of the policy where that language is unambiguous.  
Dobosz v. State Farm Fire & Casualty Co.
, 120 Ill. App. 3d 674, 678 (1983).  The parties' intentions must be enforced as written unless they are ambiguous or enforcement would contravene public policy.  
Wallis v. Country Mutual Insurance Co.
, 309 Ill. App. 3d 566, 571 (2000).  Policy language must be read with reference to the facts at hand and in conjunction with the insured's reasonable expectations and the coverage intended by the policy.  
Wallis
, 309 Ill. App. 3d at 571.  Clear and unambiguous policy language must be given its clear and ordinary meaning, not a distorted meaning used to reach a desired result.  
Wallis
, 309 Ill. App. 3d at 571.

We conclude that the trial court erred in granting summary judgment in favor of the Whitts.  The trial court based its grant of summary judgment on the "ambiguous" use of the word "flood" in the listing of exceptions to coverage contained in the brochure.  However, we find no such ambiguity.  A flood is "[a]n inundation of water over land not usually covered by it.  Water which inundates [an] area of surface of earth where it ordinarily would not be expected to be."  Black's Law Dictionary 640 (6th ed. 1990).  In this case, almost 17 inches of rain fell in the Aurora area, inundating the land in and around the Whitts' home.  The inside of the Whitts' home and the land surrounding their home was land not usually covered by water and where water would not be expected to be.  The use of the word "flood" in the brochure was not ambiguous. 

The Whitts argue, and the trial court found, that 
Dobosz
, 120 Ill. App. 3d 674, controls this case.  In 
Dobosz
, water leaked through the walls of the policyholders' basement and caused damage to the basement.  In wording almost exactly the same as the policy in the case before us, the policy excluded: 

" 'Water Damage, meaning:

a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. water which backs up through sewers or drains, or

c. natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.' "  
Dobosz
, 120 Ill. App. 3d at 678.

State Farm denied coverage and, in the ensuing lawsuit, the trial court, after a bench trial, entered judgment for State Farm.  This court reversed and entered judgment for the Doboszes.  At issue was the brochure that State Farm had sent to the Doboszes prior to their purchase of the policy.  The brochure was very similar to the brochure in the case before us; it used the captioned drawings to describe coverage, including the "Water damage" shown by the open window through which rain is falling and accumulating on the floor. 

This court found that the policyholders had relied on the brochure in choosing their insurance coverage and that there was a contradiction between the brochure, which advertised coverage for "Water damage," and the actual policy terms. Therefore, it treated the brochure as part of the insurance contract.  See 
Dobosz
, 120 Ill. App. 3d at 679.  The court then construed the ambiguity in favor of the insured and found that the policy with the brochure provided coverage for the water damage caused by the leak.  See 
Dobosz
, 120 Ill. App. 3d at 679-80.  The court also found that State Farm was estopped from relying on the exclusionary clause of the policy because the brochure misrepresented the coverage.  Both the brochure and the representations of the insurance agent led "to a reasonable expectation of comprehensive coverage of a wide variety of risks" and "clearly implied coverage."  
Dobosz
, 120 Ill. App. 3d 680-81.

However, 
Dobosz
, while similar, is distinguishable from the case before us.  
Dobosz
 was not a summary judgment case; a bench trial was held.  The plaintiff's reliance on the policy in 
Dobosz
 could be found after a trial; in the case before us, reliance and reasonable belief are not to be found as undisputed fact at the summary judgment phase.  In addition, the brochures, while very similar, were not the same.  In 
Dobosz
, the court found that the disclaimer, which told the reader that the brochure was only a description of coverage and not a statement of coverage, was in "small black print at the bottom."  
Dobosz
, 120 Ill. App. 3d at 677.  Here, the disclaimer was in bold black print in letters larger than those used in the captions describing coverage.  In addition, 
Dobosz
 makes no mention of any listing in the brochure of exceptions to coverage; here, the brochure clearly lists "flood" and "backing up of sewers and drains" as exceptions to coverage under the policy.  
Dobosz
 does not control this case.

We further conclude that the trial court erred in not granting State Farm's motion for summary judgment.  Even treating the brochure as part of the homeowners' policy (see 
Dobosz
, 120 Ill. App. 3d at 679), the policy clearly and unambiguously excluded coverage for the water damage claimed by the Whitts.  The single drawing in the brochure of rain water entering an open window and accumulating on the floor, captioned "Water damage," does not make ambiguous the clear exclusions of "flood" and "surface water."  This drawing, even taken in its most literal sense, would include only water damage done by water entering the house through an open window.  In fact, State Farm paid the Whitts for damage resulting from rain entering through a skylight and the roof.  However, both the brochure and the policy clearly exclude the rest of the damage suffered by the Whitts, and only a tortured reading of those instruments could find coverage for that damage.  In his deposition, Stuart stated that he looked at the front cover of the brochure and the drawings associated with the provided coverages.  He was unsure if he had read the bold-print disclaimer on the brochure, which advised that the brochure was not a statement of contract and that the policy itself contained exclusions and conditions.  He did 
not
 read the section of the brochure that listed exceptions to coverage, including flood and backing up of sewers and drains.  It is unclear to us how a term that was admittedly never read can cause confusion to the person who never read it.  The facts of the policy, the damage, and the cause of the damage were undisputed, and the clear, unambiguous language of the policy showed the intent of the parties.  Further, the brochure does not create an ambiguity regarding the lack of flood coverage. As a matter of law, State Farm was entitled to judgment.  Therefore, the trial court erred in denying State Farm's motion for summary judgment on the counterclaim. 

For these reasons, the judgment of the circuit court of Kane County granting summary judgment in favor of the Whitts is reversed, and the court's award of $168,377 is vacated.  The court's denial of State Farm's motion for summary judgment on the counterclaim is reversed, and judgment in State Farm's favor is entered.

Reversed.

INGLIS and HUTCHINSON, JJ., concur.