AMERICAN RIVER TRANSPORTATION COMPANY, Plaintiff-Appellee, v. GLEN L. BOWER, as Director of the Department of Revenue, *et al.*, Defendants-Appellants.

Second District    No. 2—02—1290

Opinion filed July 21, 2004.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Nadine J. Wichern, Assistant Attorney General, of counsel), for appellants.

Thomas H. Donohoe, Theodore R. Bots, and Kevin L. Batson, all of McDermott, Will & Emery, of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendants, Glen Bower, as Director of the Department of Revenue, Judy Barr Topinka, as Treasurer of the State of Illinois, and the Illinois Department of Revenue (collectively, the Department), appeal from the trial court's order denying their motion for summary judgment and granting the motion for summary judgment of plaintiff, American River Transportation Company (ARTCO). We affirm.

ARTCO operates a line of tugboats on the Mississippi, Illinois, and Ohio Rivers. In January 2002, the Department of Revenue conducted an audit of ARTCO's tax liability under the Use Tax Act (UTA) (35 ILCS 105/1 *et seq.* (West 2000)) for the periods of July 1988 through November 1993 and December 1993 through December 1999. The Department of Revenue concluded that ARTCO owed additional use tax, interest, and penalties, totaling $890,372, for diesel fuel and supplies used by its tugboats during the periods in question. ARTCO paid the assessed amounts under protest and filed a six-count complaint in the circuit court of Du Page County, seeking injunctive relief and alleging that the Department's imposition of the use tax violated the UTA and the United States and Illinois Constitutions. The parties filed cross-motions for summary judgment. The trial court granted ARTCO's motion and denied the Department's motion, finding that the Department's imposition of the tax "would be violative of the

Interstate Commerce Clause" of the United States Constitution. This appeal followed.

The Department contends that the trial court erred in granting summary judgment to ARTCO. Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, demonstrate that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Whitt v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 658, 661 (2000). A court considering such a motion must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Whitt*, 315 Ill. App. 3d at 661. Summary judgment should be granted only where the movant's right to judgment is clear and free from doubt; where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Whitt*, 315 Ill. App. 3d at 661. This court reviews *de novo* a trial court's ruling on summary judgment. *Whitt*, 315 Ill. App. 3d at 661-62. When the parties file cross-motions for summary judgment, this court is invited to decide the issues presented as questions of law. *Weber-Stephen Products, Inc. v. Department of Revenue*, 324 Ill. App. 3d 893, 898 (2001).

■ The UTA, along with the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 *et seq.* (West 2000)), provides for the Illinois "sales tax." *Weber-Stephen Products*, 324 Ill. App. 3d at 898. While the ROTA imposes an occupational tax on Illinois retailers (*Weber-Stephen Products*, 324 Ill. App. 3d at 898), the UTA imposes a tax "upon the privilege of using in this State tangible personal property purchased at retail from a retailer." 35 ILCS 105/3 (West 2000). If a retailer is located outside Illinois and therefore has no UTA or ROTA obligations, the purchaser-user in Illinois must pay the use tax directly to the State. *Weber-Stephen Products*, 324 Ill. App. 3d at 898-99. A sale at retail is defined as "any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use, and not for the purpose of resale ***, for a valuable consideration." 35 ILCS 105/2 (West 2000).

■ The Department argues that the trial court erred in concluding that the imposition of the use tax on ARTCO's use of fuel and supplies violated the commerce clause of the United States Constitution (U.S. Const., art. I, § 8). A state tax must meet four criteria in order to survive a challenge on commerce clause grounds; the tax must: (1) have a substantial nexus with the state; (2) be fairly apportioned; (3) not discriminate against interstate commerce; and (4) be fairly related to the services provided by the state. *Complete Auto Transit, Inc. v.*

*Brady*, 430 U.S. 274, 279, 51 L. Ed. 2d 326, 331, 97 S. Ct. 1076, 1079 (1977); *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 255 (1992).

■ The undisputed evidence showed that the fuel and supplies at issue were purchased and loaded onto the tugboats at ARTCO facilities in St. Louis, Missouri. These tugboats, called line haul vessels, spent at least 50% of their time pushing barges in Illinois waters; however, they never docked in any Illinois port. Smaller tugboats, called harbor service tugs, moved barges between the line haul vessels and the Illinois ports. These harbor service tugs purchased fuel in Illinois and paid use tax on these purchases.

The commerce clause requires a definite link, or minimum connection, between a state and the transaction it seeks to tax. *Quill Corp. v. North Dakota*, 504 U.S. 298, 306, 119 L. Ed. 2d 91, 102, 112 S. Ct. 1904, 1909-10 (1992); *Zebra Technologies Corp. v. Topinka*, 344 Ill. App. 3d 474, 485 (2003). For example, an out-of-state vendor must be physically present within a state in order to meet the substantial nexus requirement. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 423 (1996). This physical presence must be more than "slight" but need not actually be "substantial." See *Brown's Furniture, Inc.*, 171 Ill. 2d at 423. Here, since the ARTCO line haul tugboats spent at least 50% of their time plying waterways contained within the State of Illinois, we conclude that ARTCO had more than a slight presence in Illinois. Curiously, the Department, in attempting to distinguish the Supreme Court's pre-*Complete Auto Transit* analysis of commerce clause cases, seems to cast doubt on this issue. In *Helson v. Kentucky*, 279 U.S. 245, 73 L. Ed. 683, 49 S. Ct. 279 (1929), an Illinois company ran a ferryboat service between Illinois and Kentucky, on the Ohio River. All of the gasoline used to power the ferries was purchased and delivered in Illinois. However, 75% of it was consumed within the limits of Kentucky during interstate journeys. The State of Kentucky attempted to impose a gasoline tax on the gasoline used within the borders of Kentucky. The Court struck down the tax, holding that "such a tax cannot be laid upon the use of a medium by which such transportation [of the subjects of interstate commerce] is effected." *Helson*, 279 U.S. at 252, 73 L. Ed. at 687, 49 S. Ct. at 281. The Department argues that *Helson* would have been decided the same way under the *Complete Auto Transit* analysis, since "there would be no substantial nexus because the ferryboats in *Helson* merely traveled back and forth across the Ohio River." We fail to see how ferryboats that spent 75% of their time in the taxing state's waters, and presumably docked in that state to discharge their passengers and/or cargo, had a lesser nexus with that state than tugboats that spent at least

50% of their time in a state's waters and never docked in that state. Nevertheless, we conclude that ARTCO's line haul tugboats, which carried the fuel and supplies that are the subject of the dispute, had "a sufficient physical presence in Illinois" (*Brown's Furniture, Inc.*, 171 Ill. 2d at 424) to establish a substantial nexus with this state.

However, closely related to this criterion is the requirement that the tax be fairly related to the services provided by the state. Here, we must conclude that the imposition of the use tax in this case does, indeed, run afoul of the commerce clause because it has no relation to any services provided by this state. While ARTCO's line haul tugboats plied the waters of this state, Illinois provided no services to those tugboats. The waters are all navigable waterways of the United States and are maintained by the United States, not Illinois.

The Department relies on *Brown's Furniture, Inc.* and *Town Crier, Inc. v. Department of Revenue*, 315 Ill. App. 3d 286 (2000), to support its argument that the imposition of the use tax had a relation to the services provided to ARTCO. However, both of these cases are easily distinguished. Both cases involved out-of-state retail establishments that made substantial deliveries of their products, via their own trucks, to buyers in Illinois. As such, those retailers received the benefits of Illinois's public roads, police protection, and judicial system, as well as other advantages conferred by the maintenance of a civilized society. See *Brown's Furniture, Inc.*, 171 Ill. 2d at 429; *Town Crier, Inc.*, 315 Ill. App. 3d at 295. Here, ARTCO did not receive any such benefit from Illinois *in relation to its line haul tugboats*. The Department argues that Illinois statutory law provided ARTCO tugboats with protection from polluted waterways and protection of aquatic life. However, these "benefits," while related to waterways used by ARTCO, fall far short of the benefits that might be enjoyed by a firm sending its trucks to use the roads of this state.

Furthermore, ARTCO "paid" for the benefits of civilized society and clean water that the State provided. The harbor service tugs, which remained almost exclusively in Illinois, used fuel purchased in Illinois and paid the use tax. Thus, the portion of ARTCO's fleet that received the benefits that the State provided has also contributed to the coffers of the State. However, there is no fair relation between the use tax and the benefits that ARTCO received from the state for the use by its line haul tugboats of the navigable waterways of the United States.

In an analogous situation, an aircraft owner does not pay Illinois tax for fuel purchased and loaded out of state yet consumed while flying over this state. This is so even though the aircraft is in Illinois airspace and Illinois provides services to help keep the air clean as

well as emergency services and other indicia of "civilized society." See *United Air Lines, Inc. v. Mahin*, 49 Ill. 2d 45 (1971), *vacated & remanded*, 410 U.S. 623, 35 L. Ed. 2d 545, 93 S. Ct. 1186 (1973), *on remand*, 54 Ill. 2d 431 (1973). As is the case with the harbor service tugs, aircraft that do use ground facilities and fuel purchased in Illinois do pay the appropriate taxes. However, neither boats merely floating in the middle of the Mississippi nor planes passing over Illinois are provided benefits and services by Illinois such that the use tax would pass constitutional muster in those instances.

The *Complete Auto Transit* test also requires that a tax be fairly apportioned and not discriminate against interstate commerce. Both of these criteria are concerned with the risk of multiple taxation by more than one state. See *Geja's Cafe*, 153 Ill. 2d at 255-56. Section 3—55(d) of the UTA provides an exemption from the imposition of the use tax to those who have "already paid a tax in another State in respect to the sale, purchase, or use of *** property, to the extent of the amount of the tax properly due and paid in the other State." 35 ILCS 105/3—55(d) (West 2000). There was no evidence that ARTCO paid tax in Missouri on the fuel and supplies. As the fuel and supplies were not subjected to double taxation, and section 3—55(d) would have exempted ARTCO from the use tax for any amounts that it would have paid in Missouri, we conclude that these prongs of the test were satisfied.

A state tax must meet all four criteria of the *Complete Auto Transit* test in order to survive a commerce clause challenge; as the Department has met only three of the criteria, we must conclude that, as a matter of law, the imposition of the use tax in this instance was an unconstitutional imposition on interstate commerce. Therefore, the trial court did not err in granting summary judgment in ARTCO's favor.

Because of our conclusions herein, we need not address ARTCO's claims arising under the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2).

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GILLERAN JOHNSON, J., concurs.

JUSTICE BOWMAN, dissenting:
I respectfully dissent. I disagree with the majority's conclusion that a use tax upon ARTCO's line haul tugboats is not fairly related to

the services provided by the State. I believe that the majority's analysis focusing on whether Illinois provided any actual services to the line haul tugboats is too narrow.

The majority cites no authority for the proposition that ARTCO's line haul tugboats must directly benefit from state services before the State may impose a use tax upon the fuel consumed by those tugboats. The "fair relation" prong of the *Complete Auto Transit* test requires only that the tax be fairly related to the taxpayer's presence or activities in the State. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 51 L. Ed. 2d 326, 331, 97 S. Ct. 1076, 1079 (1977). The majority concedes that, through its laws, Illinois provides protections that are related to waterways used by ARTCO. It is also undisputed that the line haul tugboats spend at least 50% of their time in Illinois waters. I believe that the line haul tugboats' significant presence in Illinois waters, coupled with the State's provision of navigable waterways (615 ILCS 5/5 *et seq.* (West 2002)), emergency services, and access to the judicial system, among other benefits, justify the imposition of the use tax upon the line haul tugboats.

Moreover, I believe that it is incorrect to look at the line haul tugboats in isolation. Rather, we should consider that the line haul tugboats are part of an operation that makes extensive use of Illinois waterways and ports. For this reason, the majority's aircraft analogy is inapposite. This is not a situation where a vehicle briefly passes through or over Illinois territory. Rather, the line haul tugboats, while in Illinois waters, transfer barges to harbor service tugboats, which then move the barges on to Illinois ports. Because the operation of the line haul tugboats is so interconnected with that of the harbor service tugs, I believe that it is inaccurate to say that the harbor service tugboats are the only portion of ARTCO's fleet that receives benefits from the State.

I would also reject ARTCO's argument that imposing a use tax upon the line haul tugboats violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2) because trains are exempt from such tax. I agree with the Department that, even if we were to find a uniformity clause violation, ARTCO would not be relieved of its tax obligation. ARTCO suggests that this court should either (1) hold that barge carriers are not subject to the use tax, effectively creating a use tax exemption for barge carriers, or (2) put barge carriers and rail carriers on equal footing by retroactively eliminating the exemption for trains. We cannot read into the Use Tax Act an exemption for tugboats. See *Rogy's New Generation, Inc. v. Department of Revenue*, 318 Ill. App. 3d 765, 771 (2000) (holding that "courts have no power to create exemption from taxation by judicial

construction"). Alternatively, even if we were to hold that trains should not be exempt from the use tax (which I do not believe we could properly do in this particular matter), ARTCO would still owe its tax.

For the foregoing reasons, I would reverse the judgment of the circuit court of Du Page County.