J. L. WATTS CO., Plaintiff-Appellant, *v.* CLARENCE MESSING, Defendant-Appellee.

Third District   No. 82—151

Opinion filed December 30, 1982.—Rehearing denied February 8, 1983.

Marvin L. Schrager and Frank L. Nowinski, both of East Moline, for appellant.

John G. Ames, of Ames & Manecke, of Coal Valley, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

This is an appeal by plaintiff, J. L. Watts Co., of a judgment entered by the circuit court of Rock Island County in favor of defendant, Clarence Messing, in a suit for specific performance of a real estate sale/purchase contract.

Messing is the owner of business property located at 819 East First Avenue in Coal Valley, Illinois. In July of 1981, Messing listed the property for sale with Charles Heriford, an agent of the Lohman Brothers real estate firm.

Plaintiff, who had previously inquired of Heriford about the availability of business property in the Coal Valley area, was informed by Heriford of the property and arranged to have his employee, Tom Clark, inspect it.

After the inspection, Messing offered to sell for $160,000. This was promptly refused by James Watts, president of J. L. Watts Co. However, still interested, Watts personally inspected the property and authorized Heriford to present his counteroffer for $100,000. Watts made out a check for $14,000 payable to Lohman Brothers representing earnest money to be applied as a down payment on the purchase price. The counteroffer was presented to Messing by Heriford and accepted on July 22, 1981, when Messing signed a printed form sale/purchase contract with the blanks completed by Heriford.

Among the terms of the sale/purchase contract, was a provision that Watts would assume Messing's loan on the property at the Coal Valley Bank, the balance of which was $21,000, and Watts would pay the remaining $65,000 on a contract for deed. This arrangement turned out to be unacceptable to the Bank, and a second sale/purchase contract was thereafter drawn to eliminate the loan assumption references. This contract specified merely that the full $86,000 balance due Messing would be "carried on contract for deed payable $977.48, or more, per month for 180 months, said payment to include interest at the rate of 11% per annum, computed monthly, on the unpaid balance." This agreement was signed by both parties on July 29, 1981. Heriford secured the abstract for the property and delivered it to Watts' attorney, who thereafter proceeded to schedule a closing. Messing resisted and, ultimately, on September 3, 1981, Watts instituted this suit for specific performance of the July 29 contract.

The trial court, after receiving testimony, documentary evidence and briefs and arguments of counsel, denied the relief sought by

plaintiff on the basis that "the terms of a 'contract for deed' are too indefinite." Watts filed a timely notice of appeal in which he raises a single issue: are the price, terms and conditions of sale as contained in the July 29 agreement so indefinite as to render the contract unenforceable? We find that they are not.

Clearly the sale/purchase contract in question anticipated the preparation of another formal contract for deed. This fact, standing alone, does not, however, render the real estate agent's form contract unenforceable. (*Callaghan v. Miller* (1959), 17 Ill. 2d 595, 162 N.E.2d 422.) The instrument in this case bears a declaration in its heading in large bold type "This is a binding contract." The names of seller and purchaser and their respective addresses, the purchase price, the location of the property, the amount of the downpayment and terms of paying the balance, including interest, are clearly and unambiguously set forth. (See *Callaghan.*) Details as to payment of taxes and proration of other expenses are also provided, as is the broker's commission and the date as of which the purchaser was to take possession. The conditions and terms, agreed to as evidenced by the parties' signatures, are sufficient, we believe, to render the document specifically enforceable at the option of either party. *McDaniel v. Silvernail* (1976), 37 Ill. App. 3d 884, 346 N.E.2d 382.

The trial court's determination turned on the expressions "contract for deed" and "formal contract for deed," both of which were mentioned in the sale/purchase contract with reference to the final contract for financing the transaction. On appeal, the defendant relies on *Lencioni v. Brill* (1977), 50 Ill. App. 3d 802, 365 N.E.2d 1169, and urges that we uphold the trial court's finding that these expressions are too indefinite. In support of his position, defendant speculates that the parties and their respective attorneys might need to negotiate a wide range of collateral matters related to the conveyance which could have been specified in the formal contract for deed. We find defendant's argument unconvincing.

Initially, we find defendant's reliance on *Lencioni* is misplaced. In *Lencioni*, the parties contracted for the sale of certain unimproved real estate. The contract for sale provided that the defendants were to furnish a "standard form mortgage" which would be executed at the closing. Defendants forwarded a trust deed form to plaintiff in an apparent attempt to comply with the provision. When the trust deed was rejected, defendants sent a "statutory form mortgage." Plaintiffs either misplaced or never received this document, and plaintiffs then furnished defendants a different statutory form and a separate group of mortgage provision inserts. Upon defendants' refusal to accept the

additional provisions and refusal to honor the contract for sale, plaintiffs instituted suit for specific performance. The trial court found that the parties had "different understandings of the terms of [a standard form] mortgage and the court cannot properly resolve such differences by supplying the disputed terms." (50 Ill. App. 3d 802, 805, 365 N.E.2d 1169, 1171.) On appeal, the court affirmed, finding that the trial court's decision could not be said to be "clearly against the manifest weight of evidence." (50 Ill. App. 3d 802, 806, 365 N.E.2d 1169, 1172.) Several mortgage provisions had not, in fact, been agreed upon by the parties, but were later suggested and rejected, including the mortgagor's right of prepayment, if any, foreclosure procedures, assessment of attorneys' fees and the grace period, if any, allowed to the mortgagors upon default.

While at first blush, it might appear that the instant case is analogous to *Lencioni*, careful analysis of the facts of both cases convinces us otherwise. The critical difference lies in the evidence of ambiguity in the phrases chosen in each case to describe the anticipated contracts. Whereas in *Lencioni* the parties' evidence demonstrated an actual difference in their understanding of "standard form mortgages," such cannot be said of the expressions "contract for deed" and "formal contract for deed" in the present case. Indeed, mere speculation by defendant of various areas of potential disagreement is the only "evidence" of ambiguity to be found in the record before us.

The record reveals that the reason for Messing's refusal to perform lay in Messing's belated dissatisfaction with the 11% rate of interest that he would receive on the $86,000 balance due. The record indicates that the source of Messing's dissatisfaction with the interest rate can be traced to a discussion between Messing and his banker to the effect that 11% was a bad deal for Messing. This discussion apparently took place some time between the signing of the sale/purchase contract on July 29, 1981, and the anticipated closing date, August 5, 1981.

Certainly if defendant had established that his signature appeared on the sale/purchase agreement containing the allegedly low interest figure as a result of some fraud or oppression, we would not hesitate to affirm the court's denial of specific performance on these facts. Such, however, is not the case. In fact, the trial court found no evidence of fraud or oppressive conduct by either Watts Co. or Heriford. Nor does Messing dispute this finding on appeal. Under the circumstances, it appears that defendant's arguments concerning ambiguities in the expressions "contract for deed" and "formal contract for deed" are simply a smokescreen or, at best, an afterthought to avoid the le-

gal consequences of a validly-executed contract. The record does not affirmatively demonstrate the existence of actual differences in the parties' understandings of "contract for deed" and "formal contract for deed," and we see no reason to presume them. *Cf. Lencioni.*

■ On these facts, we hold that the phrases "contract for deed" and "formal contract for deed," as used in the sale/purchase contract here, are no more ambiguous than the term "mortgage," as it was used in *Callaghan v. Miller,* wherein our supreme court approved a grant of specific performance on substantially similar facts.

■ Having found that there was demonstrated neither actual nor inherent ambiguity in the terms of the sale/purchase contract here, we are of the opinion that plaintiff is entitled to the relief requested. Inasmuch as the sole reason recited by the trial court for denying specific performance in the present case was its apparent belief that the later case, *Lencioni v. Brill,* mandated a finding of inherent ambiguity in the phrases "contract for deed" and "formal contract for deed," we must reverse and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

ALLOY and SCOTT, JJ., concur.