No. 2--05--0604        Filed:  3-3-08

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| ALLEGIS REALTY INVESTORS, ABN AMRO SERVICES COMPANY, PATRIOT AMERICAN, AARON EQUIPMENT COMPANY, AETNA REALTY, B & G REALTY, INC., WILBERT A. EICH, Trustee, NOONEY- KRUMBACH, ILLINOIS TOOL WORKS, INC., INLAND REAL ESTATE, GARY SOLOMON AND COMPANY, and D.R. ZACONNE, Trustee, | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 98--TO--10 |
| JOHN LOTUS NOVAK, County Treasurer and ex officio County Collector of Du Page County, Illinois, | ) ) ) ) ) | |
| Defendant | ) ) | |
| (Lisle Township Road District, Intervenor-Appellee). | ) ) ) | Honorable Edward R. Duncan, Jr., Judge, Presiding. |

_____

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Allegis Realty Investors and other Du Page County taxpayers (Allegis), appeal from the trial court's grant of summary judgment in favor of intervenor, Lisle Township Road District (District), contending that there were material issues of fact precluding summary judgment. We reverse and remand.

Allegis filed tax objections under section 23--10 of the Property Tax Code (35 ILCS 200/23--10 (West 1996)), objecting to various taxes imposed by several units of local government. At issue in this case is "Objection A," which alleged that the District had levied an unnecessary 1997 tax for general road and bridge purposes and had improperly accumulated funds. The District intervened and filed a motion for summary judgment, which the trial court granted on December 15, 2004. The trial court subsequently denied Allegis's motion for reconsideration or rehearing, and this appeal followed.[1]

Allegis now contends that the trial court erred in granting summary judgment in favor of the District. Summary judgment is appropriate where the pleadings, depositions, and admissions on file, along with any affidavits, demonstrate that there exists no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. American River Transportation Co. v. Bower, 351 Ill. App. 3d 208, 210 (2004). A court considering a motion for summary judgment must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and in favor of the nonmoving party. American River Transportation Co., 351 Ill. App. 3d at 210. Summary judgment should be granted only when the movant's right to judgment is clear and free from doubt; where reasonable persons could draw divergent inferences from undisputed facts, summary judgment should be denied. American River Transportation Co., 351 Ill. App. 3d at 210. This court will review de novo a trial court's grant of summary judgment. American River Transportation Co., 351 Ill. App. 3d at 210.

---

[1]This court ordered the parties to submit additional briefs on the application of Allegis Realty Investors v. Novak, 223 Ill. 2d 318 (2006), to the case before us. We agree with the parties that the issues in the case before us are not affected by the decision in that case.

Taxing bodies retain broad discretion in estimating the amounts necessary to carry out their lawful objectives and may proceed to levy real estate taxes based upon these estimates. People ex rel. Toynton v. Commonwealth Edison Co., 285 Ill. App. 3d 357, 360 (1996). The law presumes that a taxing body has properly discharged its legal duty and has not abused its discretion in making a real estate levy. Toynton, 285 Ill. App. 3d at 360. The law is clear that a tax objector bears a substantial burden of proof in establishing that a taxing body has abused its discretion and has illegally accumulated or diverted taxes. Toynton, 285 Ill. App. 3d at 360-61. The mere fact that a discrepancy exists between the amount of money levied in a given year and the amount of money needed is of limited significance. Toynton, 285 Ill. App. 3d at 360.

However, the law is also clear that an unnecessary accumulation of money in the public treasury is against the policy of the law, and a real estate levy or tax rate that results in such an unnecessary accumulation is illegal. Toynton, 285 Ill. App. 3d at 361. While the courts play a limited, though significant, role in reviewing taxpayer objections to governmental appropriations and tax levies, the law is clear that courts will interfere in the taxing process when such interference is necessary to prevent a clear abuse of discretion by a taxing body. Toynton, 285 Ill. App. 3d at 360-61.

Our supreme court set forth the proper method for analyzing excess accumulations of money in Central Illinois Public Service Co. v. Miller, 42 Ill. 2d 542 (1969). In Miller, the court determined the total funds available for the fiscal year by adding the fund balance at the beginning of the fiscal year to the taxes extended for the prior year. This total was then divided by the average annual expenditure from the fund for the previous three fiscal years. In Miller, the total funds available were 2.84 times the annual average expenditure for the past three fiscal years and 3.24 times the amount

expended in the last previous fiscal year. The court then concluded that any further tax levy would result in an illegal excess accumulation. However, the Miller test is not one to be applied with mathematical precision (Toynton, 285 Ill. App. 3d at 362), and the term "accumulation" has been equated with an amount that exceeds two to three times the foreseeable expenditures of the taxing body. See Belke v. County of Peoria, 169 Ill. App. 3d 839, 844 (1988). Once such an accumulation is shown, the taxing body is to be given an opportunity to present evidence showing the need for an accumulation of such magnitude. See Toynton, 285 Ill. App. 3d at 363; In re Application of O'Connor, 80 Ill. App. 3d 354, 357 (1980).

Allegis argues that the District's levy was void because the District had accumulated excess funds in the General Road and Bridge Fund. On April 1, 1997 (the first day of the 1997-98 fiscal year), the General Road and Bridge Fund had a balance on hand of $899,767 and deferred revenue of $221,750, for a total of $1,121,517 of available assets for the 1997-98 fiscal year.[2] The record showed actual expenses for the three previous fiscal years as follows: 1994-95: $326,020; 1995-96: $371,752; and 1996-97: $471, 252, for a total of $1,169,024. The average expenses for these three years was $389,675. Thus, the Miller equation results in a funds/average expenditure ratio of 2.88:1 and a funds/last previous fiscal year ratio of 2.38:1. This evidence is sufficient to make a showing of excess accumulation and to overcome the presumption that the District did not abuse its discretion. See Toynton, 285 Ill. App. 3d at 363 (evidence that challenged funds contained from 2.01 to 2.95 times the average annual expenditure was sufficient to show excess accumulation and overcome

---

[2]In its objection, Allegis alleged that the fund assets totaled $1,170,884. On appeal, however, Allegis bases its arguments on the total of $1,121,517. We will use this lesser total for purposes of this appeal.

presumption). Thus, the burden shifts to the District to justify the levy. See Toynton, 285 Ill. App. 3d at 362-63.

Without citation to authority, the District argues that, while the necessity of a tax levy is a question of fact, the issue of justification of the levy is a matter of law. Therefore, according to the District, this court can review the various documents attached to the summary judgment pleadings and determine, as a matter of law, that justification was established and that summary judgment was appropriate. The District attached the affidavit of Michael J. Dow, Lisle Township highway commissioner, and its fiscal year 1998-99 budget, which was adopted on March 10, 1998. Allegis attached transcripts of Dow's deposition, which the trial court had ordered to be taken before ruling on the motion for summary judgment, and various deposition exhibits. We disagree with the District's argument.

Highway Commissioner Dow stated in his affidavit that he prepares the annual tax levy in October and November each year and files the ordinance in December. The budget for the following year has not been prepared at the time the tax levy is prepared. In preparing the levy, he estimates the remaining expenditures for approximately the second half of the current fiscal year, the approximate expenditures for the ensuing fiscal year, and the approximate expenditures for the next ensuing fiscal year. He also estimates what funds may be remaining at the end of the current fiscal year.

Dow stated that he is not an accountant or an economist, but that he uses his "best effort to estimate the amount of taxes that will be necessary to be raised" each year to pay for anticipated expenditures for the ensuing year "and also maintain a prudent reserve." It is his duty "to be financially prepared for a worst-case scenario in case there is extraordinary snow removal or road

repairs or other expenditures." The budget and appropriations ordinance that was attached was true and accurate, and the amounts shown for the General Road and Bridge Fund "were anticipated to be necessary expenditures for fiscal year 1998-99." If he had not levied the amount of taxes that he had, he "may not have had sufficient funds to properly perform the duties" of highway commissioner "if all anticipated expenses were actually incurred and also maintain a sufficient reserve of funds."

In his deposition, when asked about his estimates for the 1997 levy, Dow stated:

"The way the statutes are, in order to maintain our motor fuel tax, we must level [sic] the maximum tax and the only thing we do in November is do an estimate of where we have certain needs coming up, whether it is in the building and vehicle [sic] or whether it is in the road construction [sic], how we are going to use those monies and that is what is determined."

He explained that "we are controlled by the tax cap as far as the levy. *** I have no choice but to levy that."

Dow explained that the estimate of expenditures for a fiscal year "is usually based on our previous year's experience or what I know our needs are going to be for that next fiscal year." When asked if any documents existed that would show the calculated figure of the approximate estimated expenditures for 1998-99, Dow explained, "No, because again, a lot of this is judgment calls by myself as to what our needs are going to be." When asked for various calculations that Dow stated in his affidavit were made in the ultimate calculation of the levy, Dow admitted that supporting documentation concerning the levy did not exist, as it was destroyed after the levy was adopted. In describing his calculation of a "prudent reserve," Dow stated:

"I hate to be repetitious, but this is a general statement. We try to be prudent. I am sure that prudent can be relative, you know, to--from person to person because we need to know that

we have to have enough reserve to pay, you know, emergencies or costs that would come up." The 1998-99 budget, which was attached to Dow's affidavit, did not exist when the levy was prepared.

Justification is not merely a matter of law. Issues of fact and credibility come into play when the nature, extent, and reasonableness of the accumulation is examined. Dow stated that he used his "best effort to estimate the amount of taxes that will be necessary" for the ensuing year's expenditures and to maintain a "prudent reserve." He also indicated that he levied the maximum tax in order to maintain motor fuel tax revenues and that the levy was "controlled" by the tax cap. These issues of judgment, prudence, and perceived lack of control over the process are issues of fact. What those efforts were, whether they were his "best" efforts and were reasonable, whether the reserve was prudent, and whether imposing the maximum levy was reasonable are conclusions left to a fact finder, not matters of law.

However, Dow did not address facts; he talked about his opinion. Dow was unable to show the calculations involved in his best efforts to produce the levy and determine a prudent reserve; these involved "judgment calls" and were "relative." No supporting documentation for the calculations was submitted, as it had been "destroyed" after the levy was adopted. Instead, the District submitted a budget that did not exist when the levy was created and a self-serving affidavit, attempting to rebut the presumptive evidence of excess accumulation with nothing more than Dow's opinion that he had tried his best. Dow's opinion does not establish the reasonableness of, or lend credibility to, his own actions and is insufficient to refute a ratio evidencing a substantial excess accumulation.

In Toynton, the objector showed in its objections that the taxing bodies had Miller ratios ranging from 2.01 to 2.95 in various funds. The taxing bodies responded, arguing that the balances

were within discretionary parameters and listing some of the expenditures made from the funds; however, they attached no affidavits or other evidentiary documents. Toynton, 285 Ill. App. 3d at 359. The objector and the taxing bodies filed cross-motions for summary judgment. No evidence was presented during the hearing on the motion. The trial court granted the motion of the taxing bodies, concluding that the objector had failed to meet its burden to show that the levy was illegal. The appellate court found that the objector had overcome the presumption that the taxing bodies had not abused their discretion, and it determined that the objector's evidence "raised a question of fact regarding whether the tax levies were unnecessary and illegal" such that the taxing bodies were not entitled to summary judgment as a matter of law. Toynton, 285 Ill. App. 3d at 363. However, the court also concluded that the objector also was not entitled to summary judgment, as the objector's evidence "that the funds contained excess accumulations does not automatically prove that the challenged tax levies were illegal as a matter of law." (Emphasis in original.) Toynton, 285 Ill. App. 3d at 363. The court noted that no evidence had been presented regarding the taxing bodies' need for accumulations in the challenged funds; therefore, the court remanded the cause for an evidentiary hearing to allow the taxing bodies "the opportunity to present evidence in support of their claim that the accumulations in the challenged funds are justified and not an abuse of discretion." Toynton, 285 Ill. App. 3d at 363.

Similarly, in the case before us, evidence of good intentions in using "best efforts" and maintaining a "prudent reserve" is not per se justification for the accumulation. Additionally, levying the maximum tax rate possible is not a per se justification without establishing that there is a reasonable basis to levy at the maximum possible rate. The issue of fact is not automatically morphed into a matter of law by a taxing body's opinions regarding justification. If the evidence presented with a motion for summary judgment is of such a nature that no reasonable person could disagree with it

(for example, the cost of road salt had increased by 200%, and the accumulation was evidenced in this line item), then the issue of justification may become a matter of law. However, the District has submitted unsubstantiated opinion, rather than substantiated justification, for the amount of the levy. The "evidence" presented by the District in this case does not come close to the level necessary to establish, as a matter of law, that the accumulation was justified and that the District was entitled to judgment. The proper course is to remand this case for an evidentiary hearing regarding any justification for the accumulation.

For these reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BOWMAN and CALLUM, JJ., concur.