No. 2--08--0961     Filed: 11-5-09

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| JEFFREY SCHILLING and NANCY SCHILLING, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 08--L--07 |
| PATRICIA STAHL, MATTHEW STAHL, GERALD HOWELL, and U-SELL WE BUY ENTERPRISE, INC., | ) ) ) ) ) | Honorable Paul A. Logli, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Jeffrey and Nancy Schilling, appeal from the trial court's order denying their motion for summary judgment and granting the motion for summary judgment of defendants, Patricia and Matthew Stahl, Gerald Howell, and U-Sell We Buy Enterprise, Inc. (U-Sell). We reverse and remand.

On February 4, 2008, the Schillings filed a three-count complaint in the circuit court of Boone County. The Schillings alleged that, on August 3, 2007, the Stahls entered into articles of agreement for warranty deed with defendant U-Sell regarding property at 205-207 W. Main St. in Poplar Grove, Illinois. The Schillings were to buy the property for $313,500. In December 2007, Patricia Stahl met with the Schillings and discussed selling them the Poplar Grove property. Patricia notified Jeffrey Schilling on January 10, 2008, that she and her husband were ready to sell the property and wanted

to close within the next few days. On January 17, the Stahls and the Schillings entered into a contract for sale of the property for $675,000. Patricia executed the contract individually and by power of attorney on Matthew's behalf. Closing was to take place on or before January 30. An addendum to the contract provided that the Stahls would fulfill all the terms and conditions of the agreement for warranty deed with U-Sell, including full payment of the mortgage balance, by January 30.

On January 28, defendant Gerald Howell of U-Sell informed Nancy Schilling that the contract between the Stahls and the Schillings "was cancelled." Patricia Stahl also told Nancy that she and Howell "had decided not to sell" the property. On January 30, the Schillings went to the title company offices for the scheduled closing, as did a representative of U-Sell, but the Stahls did not appear.

Count I of the Schillings' complaint sought a declaratory judgment against the Stahls requiring specific performance of the contract. Count II alleged breach of contract by the Stahls, while count III alleged tortious interference with a contract against Howell and U-Sell. The Schillings and the Stahls filed cross-motions for summary judgment. On September 18, 2008, the trial court granted summary judgment in favor of the Stahls and denied summary judgment for the Schillings. This appeal followed.

The Schillings now contend that the trial court erred in granting summary judgment in favor of the Stahls and denying summary judgment in their favor. Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Allegis Realty Investors v. Novak, 379 Ill. App. 3d 636, 637 (2008). The pleadings, depositions, admissions, and affidavits are to be construed against the movant and in favor of the nonmoving party. Allegis Realty

Investors, 379 Ill. App. 3d at 637. A court should grant summary judgment only when the movant's right to judgment is clear and free from doubt; where reasonable persons could draw divergent inferences from undisputed facts, summary judgment should be denied. Allegis Realty Investors, 379 Ill. App. 3d at 637. We review de novo a trial court's decision regarding summary judgment. Allegis Realty Investors, 379 Ill. App. 3d at 637.

In their motion for summary judgment, the Schillings sought specific performance of the January 17, 2008, contract; they included no argument regarding counts II and III of their complaint. In their motion, the Stahls argued that the agreement was too indefinite to be enforceable and listed 12 terms "which were not agreed to and are material to the sale of the property."

To state a cause of action for specific performance, a plaintiff must allege: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or refusal of the defendant to perform his part of the contract. Hoxha v. LaSalle National Bank, 365 Ill. App. 3d 80, 85 (2006). In order for a party to be entitled to specific performance, the contract must be so certain and unambiguous in its terms and in all its parts that a court can require the specific thing contracted for to be done. Cefalu v. Breznik, 15 Ill. 2d 168, 170 (1958). It is not sufficient to show the existence of some kind of agreement between the parties; where there is ambiguity, doubt, or uncertainty with respect to its terms, equitable enforcement by specific performance will be denied. Cefalu, 15 Ill. 2d at 170. The method or manner of payment is an essential part of an agreement to purchase real estate, and the contract must specify not only the price but the terms and conditions of the sale as well. Cefalu, 15 Ill. 2d at 170.

Attached to the complaint as exhibit "C" was the contract for purchase and sale dated January 17, 2008. The names and addresses of the parties, as well as the description of the property, were listed. The sale price was $675,000, with $1,000 paid as earnest money. The contract was signed by the Schillings as buyers and the Stahls (with Patricia signing for Matthew by power of attorney) as sellers. Above the signatures, in bold capital letters, was printed:

**"NOTICE TO PARTIES**

**BY THE SIGNING OF THIS CONTRACT, YOU ARE ENTERING INTO A BINDING LEGAL AGREEMENT. ANY REPRESENTATION UPON WHICH YOU RELY SHOULD BE INCLUDED IN THIS AGREEMENT. NO ORAL REPRESENTATION WILL BE BINDING UPON OR AN OBLIGATION OF THE SELLER, BUYER, REAL ESTATE BROKER, OR AGENT.**

**TIME IS OF THE ESSENCE OF THIS CONTRACT AND OF ALL THE TERMS AND CONDITIONS HEREOF."**

The addendum, identified in the contract and similarly signed by the parties, was also included as part of the exhibit. Pursuant to the addendum, the Stahls were party to the agreement for warranty deed for the property at 205-207 W. Main in Poplar Grove. The Stahls warranted that they would comply with and fulfill all terms of the agreement, including full payment of the mortgage balance, taxes, insurance, and fees on or before January 30, 2008. They then would sell the property to the Schillings for $675,000. The Schillings would provide to the Stahls $435,000 cash at closing and a promissory note and mortgage in the amount of $240,000. The promissory note was to bear interest at 4% simple interest per annum for five years, with interest to begin accruing from the closing date. The first payment was due one month from closing with payments in consecutive months thereafter;

payments were to be mailed to the Stahls at 817 Blakely Street in Woodstock, Illinois. The payments were to be "interest only or more" at the Schillings' option. All outstanding principal was to be paid to the Stahls on or before five years from closing. The addendum also provided for the Schillings' right of first refusal to purchase the note if the Stahls decided to sell it and for the substitution of collateral securing the mortgage as long as (1) the equity in the substituted property was equal to or greater than the outstanding principal balance on the note at the time of substitution and (2) the cash flow from the substituted property was equal to or greater than the minimum committed payment on the note at the time of substitution.

The Stahls, in their words, "have admitted that the Contract and Addendum have sufficient terms as to the promissory note." However, they argue that the parties did not discuss, let alone come to an agreement on, any terms of the mortgage. The Stahls, as did the trial court, rely extensively on Lencioni v. Brill, 50 Ill. App. 3d 802 (1977). The parties in Lencioni entered into a contract for the purchase of real estate, providing that the defendants would furnish a " 'standard form mortgage' " for the plaintiffs to execute and return at closing. Lencioni, 50 Ill. App. 3d at 804. The plaintiffs rejected the forms filled in and sent by the defendants as not proper and ultimately sent to the defendants a statutory mortgage form, obtained from a stationer, and a separate group of printed mortgage provision inserts. Lencioni, 50 Ill. App. 3d at 804. At trial, the plaintiffs introduced an exhibit that included similar printed clauses, including a mortgage prepayment clause and a clause granting a grace period after a missed payment before default. Lencioni, 50 Ill. App. 3d at 804. The defendants rejected those provisions and did not honor the contract, leading to the plaintiffs' suit for specific performance. Lencioni, 50 Ill. App. 3d at 804. After the trial, the trial court found that many of the mortgage provisions supplied by the plaintiffs varied significantly from the original terms of the

contract and that, while the parties "had agreed to what they called a standard form mortgage, they have different understandings of the terms of such a mortgage" such that the court could not properly resolve the differences by supplying the disputed terms. Lencioni, 50 Ill. App. 3d at 805.

This court concluded that the phrase " 'standard form mortgage' " was "not definitive and contemplates different terms to different persons." Lencioni, 50 Ill. App. 3d at 806. Before the trial court could order the defendants to carry out the sale, it would have to "fix those mortgage provisions not agreed upon by the parties," such as prepayment penalties, foreclosure procedures, the imposition of attorney fees and other costs in a foreclosure proceeding, and the existence and potential length of a grace period before default. Lencioni, 50 Ill. App. 3d at 806. Under the evidence presented in the case, the trial court "could not properly resolve these substantial disputed terms of the contract," and this court could not say that its decision was against the manifest weight of the evidence. (Emphasis added.) Lencioni, 50 Ill. App. 3d at 806.

Here, defendants attempt to frame this case within the contours of Lencioni and list 13 mortgage terms that were not provided for in the contract and addendum, including those specifically listed in Lencioni. However, Lencioni is distinguishable. The mortgage terms at issue in Lencioni were "disputed." See Lencioni, 50 Ill. App. 3d at 804, 806. By definition, there is no agreement where provisions are disputed by the parties. However, in the case before us, there are no disputed terms. While defendants argue that mortgage terms are missing and, thus, not agreed upon, the absence of an express agreement regarding a provision, or even 13 provisions, is not evidence that terms are disputed, are not agreed upon, or even were not considered. As the Stahls failed to show up at the closing and present a mortgage, it would be difficult for anyone to dispute the "missing terms" of a document that the Stahls failed to present.

More on point with this case is J.L. Watts Co. v. Messing, 111 Ill. App. 3d 937 (1982). In J.L. Watts Co., the parties agreed to the sale/purchase of property for $100,000, with $14,000 paid up front as earnest money. The contract specified that the $86,000 balance would be " 'carried on contract for deed payable $977.48, or more, per month for 180 months, said payment to include interest at the rate of 11% per annum, computed monthly, on the unpaid balance.' " J.L. Watts Co., 111 Ill. App. 3d at 938. The defendant seller resisted scheduling a closing, and the plaintiff buyer brought suit for specific performance.

After a trial, the trial court found for the defendant. The appellate court reversed and remanded, concluding that the anticipated preparation of another contract for deed, standing alone, did not render the contract unenforceable. J.L. Watts Co., 111 Ill. App. 3d at 939. The sales contract itself bore in "large bold type 'This is a binding contract' "; it also "clearly and unambiguously set forth" the names and addresses of the buyer and the seller, the purchase price, the location of the property, the amount of the down payment, and terms of paying the balance, including interest. J.L. Watts Co., 111 Ill. App. 3d at 939. Other terms, including payment of taxes, proration of certain expenses, and the broker's commission, were also included. J.L. Watts Co., 111 Ill. App. 3d at 939. The court distinguished Lencioni, as we have here, because of the "actual difference in their understanding" of the terms in Lencioni and described as "mere speculation" the various areas of potential disagreement between the parties in the case before it. J.L. Watts Co., 111 Ill. App. 3d at 939-40.

In the case before us, the contract clearly identified the parties, the property, the price, and the earnest money provided. It also clearly notified the parties that they were entering into a binding legal contract. The addendum to the contract clearly included the amount to be provided at closing,

the amount of the promissory note and mortgage, the interest rate, the method of interest calculation, the date from which interest was to accrue, the term of the note, the payment schedule, and the address to which payments were to be sent. Prepayment would be allowed without penalty, as the Schillings were given the option of paying "interest only or more." It also provided for the Schillings' right of first refusal to purchase the note if the Stahls decided to sell it and for the substitution of collateral securing the mortgage. The parties, price, and terms of payment are clear and unambiguous.

A mortgage is an interest in land, created by a written instrument providing security in real estate to secure the payment of a debt. Aames Capital Corp. v. Interstate Bank of Oak Forest, 315 Ill. App. 3d 700, 703 (2000). The "missing" terms listed by the Stahls, like those in J.L. Watts Co., are a list of "what ifs" that could arise at some future date, not terms that are essential to the creation of such an interest. For example, the Stahls list as unaddressed: prepayment (which actually was addressed, as the Schillings could pay "interest only or more"); procedures and imposition of costs and fees in the event of foreclosure; grace period before default; maintenance of insurance; remedy for failure to pay taxes; rights under a condemnation proceeding; assignment of rents; rights to insurance proceeds if the property is damaged; obligations regarding any future environmental contamination; subordination agreements; and rights if a mechanic's lien is recorded against the property. Most or all of these terms would be included in a standard mortgage, and a strongly positioned bank could require them to protect its rights. However, it does not follow that the lack of such terms renders the agreement in this case ambiguous and unenforceable. To the extent that any such rights are not included, those rights do not exist; the noninclusion of those rights does not signal a dispute as to what rights exist.

Even the argument that there is no explanation of whether such a mortgage would be a first or a second mortgage is a red herring. There is a presumption that the first mortgage recorded has priority. See Aames Capital Corp., 315 Ill. App. 3d at 704. The mortgage's priority is based on when it is recorded. Furthermore, the addendum provided for the substitution of collateral securing the note so long as the equity in the substituted collateral was the same as or greater than the balance due on the note and the cash flow from the new collateral was the same as or greater than the minimum payment due on the note. Such a detailed substitution term shows not only that the terms of the mortgage were discussed but that a specific agreement was reached. Position was not as important as equity and cash flow. The existence of such a term demonstrates that position was not an open, ambiguous term, let alone a disputed term.

We conclude that the contract and addendum were so certain and unambiguous in their terms and in all their parts that the Schillings were entitled to specific performance of the contract. Thus, the trial court erred in granting summary judgment to the Stahls and in denying summary judgment to the Schillings.

For these reasons, the judgment of the circuit court of Boone County is reversed, and the cause is remanded for further disposition consistent with the decision granting specific performance.

Reversed and remanded.

O'MALLEY and JORGENSEN, JJ., concur.